616 F.2d 228
 Albert H. CARTER and Charles B. Chapman, Individually and on
behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
Jesse E. CLARK, Clerk, United States District Court for the
Southern District of Texas, Defendant-Appellee.
 No. 78-3231.
 United States Court of Appeals,
Fifth Circuit.
 May 2, 1980.
 
 Susan F. Hamelin, Dallas, Tex. (Court-appointed), for plaintiffs-appellants.
 James R. Gough, Asst. U. S. Atty., Houston, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GEWIN, RUBIN and SAM D. JOHNSON, Circuit Judges.
 GEWIN, Circuit Judge:
 
 
 1
 Appellants Albert Carter and Charles Chapman instituted a class action suit on January 30, 1978 against the clerk of the District Court for the Southern District of Texas seeking a declaratory judgment that a local district court rule was in contravention of 28 U.S.C. § 1746 (1976). The statute provides that in all federal governmental proceedings, written declarations made under "penalty of perjury" were permissible in lieu of sworn affidavits subscribed to before notary publics.[1] The local rule of court was ordered by then Chief Judge Reynaldo Garza[2] and required that in the future all pleadings by prison inmates required by law to be verified, should be notarized.[3]
 
 
 2
 The case was docketed before Judge Carl Bue and the Attorney General of the State of Texas was certified as a real party in interest. The Attorney General's office submitted trial memoranda detailing the availability of notarization services to all Texas Department of Corrections units. On June 20, 1978 appellants filed a Motion for Disqualification and Recusal of Judge Bue under 28 U.S.C. §§ 144 and 455, on which he never ruled.[4] Before seeking or receiving any trial memoranda from appellants, granting or denying class status to appellants or even effecting service of process, Judge Bue dismissed the action on the merits on August 18, 1978 holding that the notarization requirement was valid.[5]
 
 
 3
 Appellants urge this court to reverse based on the factual conflict between the statute and the local court rule or based on Judge Bue's failure to recuse himself.[6] Finding merit in appellants' first contention we reverse.
 
 
 4
 The issue which is before the court is purely a legal one. Does the statute passed by Congress and signed into law by the President in 1976 (28 U.S.C. § 1746 (1976)) conflict with the local court rule adopted by the Southern District of Texas in 1978? The requirement for the consistency of local court rules with federal statutes is found in 28 U.S.C. § 2071 and there is no doubt from the language of that statute that federal law and procedural rules of practice and procedure are to take precedence over such local rules.
 
 
 5
 The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.
 
 
 6
 28 U.S.C. § 2071. It is clear from this statute that local courts may make local rules. It is equally clear, however, that such rules may not be in conflict with Acts of Congress.
 
 
 7
 Section 1746 of Title 28, United States Code, was passed in 1976 for the purpose of permitting "the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits" H.R.Rep. No. 94-1616, 94th Cong., 2d Sess. 1, reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 5644, 5644. The only exceptions to the application of the statute are that "unsworn written declaration(s) given under penalty of perjury may not be substituted for (1) deposition(s), (2) an oath of office, or (3) a document required to be signed before a specified official other than a notary." Id. at 2, reprinted at (1976) U.S.Code Cong. & Admin.News, p. 5645.
 
 
 8
 Appellees urge that § 1746 was not intended to encompass prisoner litigation. Yet there is no such indication in the legislative history of the statute. The wording of the statute is inclusive as is the statement of purpose quoted above from the legislative history. There is no indication whatsoever that the statute does not include prisoner petitions.
 
 
 9
 Appellees contend that legislative intent with regard to § 1746 may be inferred from the passage twenty days earlier of new rules governing habeas corpus petitions pursuant to 28 U.S.C. §§ 2254 and 2255.[7] Rule 2(c) of those rules provides that:
 
 
 10
 (t)he petition shall be in substantially the form annexed to these rules, except that any district court may by local rule require that petitions filed with it shall be in a form prescribed by the local rule.
 
 
 11
 It is not clear to this court, however, that Rule 2(c) expresses a Congressional intent contrary to the application of section 1746 to prisoner petitions. While Rule 2(c) does vest some amount of discretion in the district courts it does not give those courts authority to contravene federal statutes through local rules. While they may, under Rule 2(c), regulate the form in which habeas corpus petitions are submitted, they may not do so in violation of federal statutes.[8]
 
 
 12
 This is not to indicate that this court is enamoured with the wisdom of Congress in enacting such a broad statute on this topic. As appellees urge, to allow prisoners to verify their own petitions with only the penalty of perjury to ensure their truthfulness may open the courts to some abuse. Our task, however, is not to determine what the best law would be. We must only determine what Congress says the law is.
 
 
 13
 Whatever the implicit intention of the statute may have been Congress did not expressly exclude prisoner petitions from its coverage. To allow a local court to carve out its own exception to the application of the statute arbitrarily could signal the abrogation of the statute. There would be nothing to restrain the courts from carving out any exception to its application that they pleased and the clear intent of Congress, to eliminate or at least severely limit the requirement of the outmoded notarial seal, would be thwarted. Congress in its good judgment may decide that prisoner petitions should still be notarized. This court, however, may not do so in the face of section 1746. Cf. Briggs v. Goodwin, 569 F.2d 1, 10 (D.C.Cir.1977) ("If, as appellees melodramatically contend, application of Section 1391(e) as written 'would subvert the orderly administration of the criminal justice system', it is Congress that should be alerted, for we are not at liberty to act in its stead").
 
 
 14
 Accordingly, the local rule of the Southern District of Texas requiring notarization of prisoner petitions in contravention of 28 U.S.C. § 1746 must be abrogated. The judgment of the lower court is REVERSED.
 
 
 
 [1]
 28 U.S.C. § 1746 (1976) provides as follows:
 Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
 (1) If executed without the United States: "I declare (or certify, verify or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)."
 (2) If executed within the United States, its territories, possessions or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."
 
 
 [2]
 Judge Garza is now a United States Circuit Judge on the United States Court of Appeals for the Fifth Circuit
 
 
 [3]
 The rule apparently was initiated by the following letter from Chief Judge Garza dated January 16, 1978 to Judge Bue, Mr. Thomas, the district court clerk and one Ms. Polis:
 I want to refer you to my letter of December 2, 1977, with regard to accepting papers filed by prisoners without the necessity of notarization before a Notary Public as provided in 28 U.S.C. 1746.
 We are in receipt of a letter from the Attorney General's office of the State of Texas, a copy of which I am sending each of you. The reasons expressed by the Attorney General's office for requiring notarization before a Notary Public have merit. It is my understanding that Notaries Public are made available to all Texas inmates. The purpose of the statute, I believe, was to take care of those situations where a Notary is not readily available.
 I am, therefore, authorizing the Clerk's office not to accept any prisoner complaints that need an affidavit without the inmate having the same notarized before a Notary Public or some other officer authorized to administer oaths.
 I am taking the liberty of sending a copy of this letter to Mr. Charles B. Chapman, who originally inquired about this matter.
 
 
 [4]
 The Motion for Disqualification and Recusal was based primarily on Judge Bue's extensive experience with appellant Carter including his memorandum and opinion in Carter v. Telectron, 452 F.Supp. 944 (S.D.Tex.1977) in which Judge Bue doggedly listed and discussed 178 cases which Carter had filed against numerous defendants in numerous courts, most of them in forma pauperis. In that opinion Judge Bue referred to Carter as "a litigant without principle or any semblance of good faith." Id. at 1004
 
 
 [5]
 In the interim between the filing of this action and Judge Bue's dismissal of it, appellant Carter and William D. Browne moved in the Supreme Court for leave to file a petition for a writ of mandamus directed to the Southern District of Texas. Chief Judge Garza directed Judge Bue to make a full response. Judge Bue filed a response detailing many problems experienced with Carter as a pro se litigant. The Supreme Court denied leave to file the petition for mandamus on October 2, 1978
 
 
 [6]
 An analysis of whether statutory requirements were met to show personal prejudice on the part of Judge Bue is not required in this case. Judge Bue has been removed from any future litigation involving appellant Carter in the Southern District of Texas. Even if this case were remanded to the district court, Judge Bue would not hear it. Because there are no factual matters in dispute, however, our review of the lower court's judgment will require no further lower court hearing in any event
 
 
 [7]
 The new Habeas Corpus Rules, officially, the Rules Governing Section 2254 Cases in the United States District Courts, were promulgated by the Supreme Court on April 21, 1976 and approved with changes by Congress by Act of September 28, 1976, Pub.L. 94-426, 90 Stat. 1334. The rules as finally approved appear in 28 U.S.C.A. following § 2254
 
 
 [8]
 Professor Charles Alan Wright has noted in Procedure for Habeas Corpus, 77 F.R.D. 227 (1977) that verification of habeas corpus petitions no longer contemplates notarization after the passage of 28 U.S.C. § 1746. See 77 F.R.D. at 237 n. 44