**UNITED STATES of America, et al.,
Plaintiffs, Appellants,**

v.

**Daniel KLUBOCK, et al.,
Defendants, Appellees.**

**No. 86–1413.**

United States Court of Appeals,
First Circuit.

Heard Oct. 10, 1986.

Amended Panel Opinion
Oct. 30, 1987.

Sara Criscitelli, Dept. of Justice, Washington, D.C., with whom William F. Weld, U.S. Atty., and Martha B. Sosman, Asst. U.S. Atty., Chief, Civil Div., Boston, Mass., were on brief for appellants.

Michael S. Greco with whom Richard W. Renehan, David A. Hoffman and Hill & Barlow, Boston, Mass., were on brief for appellees Mass. Bd. of Bar Overseers, and Bar Counsel, Daniel Klubock.

Benjamin Fierro, III, Edward J. Smith, DiCara, Selig, Sawyer & Holt and Peter W. Agnes, Jr., Boston, Mass., were on brief for appellee Mass. Bar Ass'n.

Max D. Stern with whom Patricia Garin, Stern & Shapiro, Jeanne Baker, Silverglate, Gertner, Baker, Fine, Good & Mizner, Matthew H. Feinberg and Segal, Moran & Feinberg, Boston, Mass., were on brief for

---

intervenors Boston Bar Ass'n and Mass. Ass'n of Criminal Defense Lawyers.

Eugene C. Thomas, President, American Bar Ass'n, Boise, Idaho, Paul S. Diamond, Philadelphia, Pa., Steven H. Goldblatt and Charles G. Cole, Washington, D.C., on brief for The American Bar Ass'n, amicus curiae.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

## AMENDED PANEL OPINION

TORRUELLA, Circuit Judge.

This appeal presents a question of first impression which directly implicates the rule-making powers of the district courts, and indirectly, rights guaranteed by the Sixth Amendment of the Constitution.[1] The precise point before us is whether a district court can adopt a local rule which requires prosecutors to seek prior judicial approval before serving a grand jury subpoena upon an attorney, for the purpose of obtaining evidence about the attorney's clients.

### Background

In early 1986 the Supreme Judicial Court of Massachusetts (SJC), at the prompting of the Massachusetts Bar Association, adopted an ethical rule known as Prosecu-

torial Function 15 ("PF 15"),[2] which states that:

It is unprofessional conduct for a prosecutor to subpoena an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney/witness to provide evidence concerning a person who is represented by the attorney/witness.

Thereafter, on June 27, 1986, the United States District Court for Massachusetts specifically amended its Local Rules to include PF 15 as a rule of the District Court, effective July 1, 1986.[3]

The response of the federal prosecutorial establishment to PF 15 was the filing of the law suit which gives rise to this appeal.[4] The United States and various of its prosecutors who are members of the Massachusetts bar,[5] claim the invalidity of PF 15 both as a rule of the SJC and as a local rule of the District Court. The substance of the allegations are that PF 15 violates the Supremacy Clause of the Constitution because it allegedly conflicts with the Federal Rules of Criminal Procedure and federal substantive law, and because the local rule which adopted PF 15 exceeds the District Court's rule-making powers.

After a hearing the District Court on February 28, 1986 denied plaintiffs' re-

---

1. U.S. Const. amend. 6:

   In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense.

2. Codified at SJC Rules 3:08.

3. Prior to that date PF 15 was incorporated by reference to the District Court's Local Rules by virtue of Local Rule 5(d)(4)(B). That rule originally provided:

   Acts or omissions by an attorney admitted to practice before this Court * * * which violate the Code of Professional Responsibility * * * shall constitute misconduct and shall be grounds for discipline * * *. The Code of Professional Responsibility means that code adopted by the highest court of the state, or commonwealth * * * except as otherwise provided by specific Rule of this Court after consideration of comments * * *.

   As subsequently amended Local Rule 5(d)(4)(B) now states:

   Acts or omissions by an attorney admitted to practice before this Court * * * that violate

the ethical requirements and rules concerning the practice of law of the Commonwealth of Massachusetts, shall constitute misconduct and shall be grounds for discipline * * *. The ethical requirements and rules concerning the practice of law mean those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07 and 3:08 of said court * * *.

4. Actually, the suit was filed on December 31, 1985, after the SJC had enacted PF 15, but prior to its taking effect January 1, 1986. The suit thus challenged PF 15 as part of SJC Rule 3:08, and its incorporation into Local Rule 5(d)(4)(B) in its original form. None of this, however, alters the outcome of this dispute in any way.

5. William F. Weld, United States Attorney for the District of Massachusetts, Craig C. Donsanto, Director of the Election Crimes Branch, Criminal Division of the Department of Justice, and Albert S. Dabrowski, Assistant United States Attorney for the District of Connecticut.

quest for an injunction, holding that PF 15 was within the judiciary's supervisory power over grand juries, was not violative of the Supremacy Clause, and did not impermissibly interfere with federal prosecutorial responsibilities.

On appeal plaintiffs-appellants claim: (1) that the District Court lacked the power to promulgate PF 15 as a local rule, (2) that the Supremacy Clause bars enforcement of PF 15 against federal prosecutors, and (3) that PF 15 is so wanting in sound policy value that this Court should exercise its supervisory powers to invalidate it.

*The Supremacy Clause issue*

In our view, appellants' arguments regarding the Supremacy Clause are either moot or fail to present a justiciable controversy at this time.

It is axiomatic that the Supremacy Clause of the Constitution [6] has relevance only to *state* interference with federal law. *See Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); *Michigan Canners & Freezers Assn. v. Agricultural Marketing & Bargaining Board*, 467 U.S. 461, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984). Yet, since its adoption by the District Court, PF 15 can no longer be considered to be a state law, because by its incorporation into the local rules, PF 15 has become *federal* law. *See United States v. Hvass*, 355 U.S. 570, 574–75, 78 S.Ct. 501, 504, 2 L.Ed.2d 496 (1958). It is immaterial that its origin lies with a rule of the SJC. By its absorption into the local rules, first indirectly in the original version of Local Rule 5(d)(4)(B), and later by specifically including SJC Rule 3:08 (which contains PF 15) within the text of Local Rule 5(d)(4)(B)), PF 15 is as much federal law as if enacted initially by the district court. To that extent, the Supremacy Clause argument is clearly spurious.

Nonetheless appellants press this claim against the possibility that a federal prosecutor, a member of the Massachusetts bar, may be theoretically vulnerable to being charged in the *state* disciplinary forum if he/she acts contrary to PF 15 in a jurisdiction other than Massachusetts, (for example, if plaintiff Dabrowski, a member of the Massachusetts bar, serves a subpoena in Connecticut, where he is an assistant United States attorney, without compliance with PF 15). If PF 15 is read literally, appellants' fears, although somewhat far-fetched, cannot be totally discounted. We are not free, however, to ignore the record in this case and the policy statements of those charged with administering PF 15. *See Field v. Brown*, 610 F.2d 981, 991 (D.C.Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 792 (1979).

As interpreted by defendant-appellee Klubock, Bar Counsel of the Massachusetts Board of Bar Overseers and the person charged with instituting all disciplinary proceedings in Massachusetts, PF 15 will not be applied against any federal prosecutor for any action taken extraterritorially. Furthermore, Klubock has stated that any enforcement proceedings dealing with alleged violation of ethical rules, including PF 15, would, as applied to federal prosecutors, be brought only in the District Court of Massachusetts. Thus, as presently interpreted and enforced by the Massachusetts authorities, federal prosecutors who are members of the Massachusetts bar are subject to PF 15 only for their actions within the District of Massachusetts, and, in such cases, through disciplinary action brought only in the federal forum. That forum also has before it the policy statements of the Massachusetts authorities, *upon which we are relying for this decision*. While such policy continues in effect, there is no case or controversy for us to decide, and hence there is no remaining Supremacy Clause issue. *See Field v. Brown, supra*. We, of course, cannot pre-

---

6. U.S. Const. art. VI, cl. 2:
   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding.

dict any changes in the stated policy, or what would be the outcome of any legal situation created thereby—we should not cross that proverbial bridge until required to do so by the constitutional circumstances.

*The Rule–Making Power of the District Courts*

It is generally accepted that the district courts have broad rule-making powers both by reason of the inherent nature of the judicial process, ex-statute, *see Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 561 (3d Cir.1985) (en banc), and pursuant to powers statutorily vested in the courts. *See* 28 U.S.C. § 2071;[7] Fed.R.Crim.P. 57;[8] Fed.R.Civ.P. 83;[9] *Michaelson v. United States*, 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924); *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873); *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821); *Eash v. Riggins Trucking Inc.*, *supra; Ma v. Community Bank*, 686 F.2d 459, 471 (7th Cir.), *cert. denied*, 459 U.S. 962, 103 S.Ct. 287, 74 L.Ed.2d 273, *reh'g denied*, 459 U.S. 1081, 103 S.Ct. 504, 74 L.Ed.2d 642 (1982). *See generally* Roberts, *The Myth of Uniformity in Federal Civil Procedure: Federal Civil Rule 83 and District Local Rule-making Powers*, 8 Univ. Puget Sound L.Rev. 537 (1985); Flan-

ders, *In Praise of Local Rules*, 62 Judicature 28 (June—July, 1978); Weinstein, *Reform of Federal Court Rulemaking Procedures*, 76 Col.L.Rev. 905 (1976); Note, *Rule 83 and the Local Rules*, 67 Col.L. Rev. 1251 (1967); Comment, *The Local Rules of Civil Procedure in the Federal District Courts—A Survey*, 1966 Duke L.J. 1011.

We need not, for purposes of this appeal, fully describe the nature or extent of this rule-making power. Initially it is sufficient if we make reference to the various cases holding that this power is generally limited to (1) procedural rather than substantive matters, *see Colgrove v. Battin*, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (local rule that established six-person juries for civil cases is a permissible procedural innovation), (2) which are not inconsistent with the Federal Rules, *see Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir.1976) (local rule requiring non-domiciliary plaintiffs to post security for costs, expenses and attorneys' fees is valid and not contrary to Federal Rules), or (3) with Federal statutes. *See Johnson v. Manhattan Ry.*, 289 U.S. 479, 503, 53 S.Ct. 721, 730, 77 L.Ed. 1331 (1933) (local rule regarding work assigned to district judge invalid as inconsistent with specific statutory provision regarding designated circuit judge).

Whether it is characterized as ethical or procedural, or whether the power in ques-

**7.** 28 U.S.C. § 2071 states:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.

**8.** Federal Rules of Criminal Procedure 57 provides:

Each district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, make and amend rules governing its practice not inconsistent with these rules. A local rule so adopted shall take effect upon the date specified by the district court and shall remain in effect unless amended by the district court or abrogated by the judicial council of the circuit in which the district is located. Copies of the rules and

amendments so made by any district court shall upon their promulgation be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public. In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.

**9.** Federal Rules of Civil Procedure 83 states:

Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.

tion derives as a result of statutory delegation[10] or inherent judicial authority,[11] the competence of the district courts to make local rules regarding the admission of attorneys to their respective bars, and the control of their conduct thereafter, cannot at this late date be seriously questioned. *See Roadway Express v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Cohen v. Hurley*, 366 U.S. 117, 123–24, 81 S.Ct. 954, 958, 6 L.Ed.2d 156 (1961); *Ex parte Garland*, 71 U.S. (4 Wall) 333, 18 L.Ed. 366 (1867); *Ex parte Secombe*, 60 U.S. (19 How.) 9, 15 L.Ed. 565 (1856); *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 6 L.Ed. 152 (1824); *Eash, supra*, 757 F.2d at 561; *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir.1984); *Brown v. Supreme Court of Virginia*, 359 F.Supp. 549 (E.D. Va.1973), *aff'd*, 414 U.S. 1034, 94 S.Ct. 534, 38 L.Ed.2d 327 (1973). Naturally, this power may not be exercised arbitrarily. *In re Fisher*, 179 F.2d 361, 370 (7th Cir.1950), *cert. denied*, 340 U.S. 825, 71 S.Ct. 59, 95 L.Ed. 606 (1950); *see Koningsberg v. State Bar*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957). PF 15 is clearly a local rule which seeks to control discipline within its bar membership and, thus, within the general rule-making power of district courts.

That there are latent ethical issues in the serving of a subpoena on actual or prospective counsel opponent should be perceived without much difficulty. Even where an indictment may not have issued, and thus technically the attorney/witness is not yet an "adversary," since the subpoena regulated by PF 15 seeks to compel evidence "concerning a person who is represented by the attorney/witness," it relates to an established attorney-client relationship. The serving of a subpoena under such circumstances will immediately drive a chilling wedge between the attorney/witness and his client. This wedge is the natural consequence of several underlying factors created by this anomalous situation. Most obvious is the fact that the client is uncertain at best, and suspicious at worst, that his *legitimate* trust in his attorney may be subject to betrayal.[12] And because the subpoenaed attorney/witness may himself feel intimidated, this may *in fact* take place if there is not even minimal ethical control regulating the subpoenaing of an attorney/witness to seek evidence against his client.

More subtle, but perhaps more important in terms of the ethical setting within which PF 15 is framed, is the immediate conflict of interests created between the attorney/witness and his client by the serving of a subpoena in the context of what is contemplated by PF 15. As a witness, the attorney/witness has separate legal and practical interests apart from those of his client. These interests may or may not coincide with those of the attorney/witness and his client. The mere possibility of such a conflict is sufficient to create a problem. A minimal overview by an impartial observer, as is provided by PF 15, can go far in preventing the creation of these ethical conflicts between the attorney/witness and his client.

Closely related to this last point is the diversion of interests and resources brought about by the conversion of the attorney into a witness. The attorney now has a difficult "second front" to deal with, in which he must dedicate his own time and resources to looking after his own interests, while at the same time trying to protect those of his client. The strain on the attorney's time/resources, to say nothing of the disruption in his/her client's representation, goes far beyond a mere conflict of interest situation. Although it is impos-

**10.** *See* 28 U.S.C. § 1654, which states:

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

**11.** *See Ex parte Garland*, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866); *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 6 L.Ed. 152 (1824); *Laughlin v.*

*Clephane*, 77 F.Supp. 103 (D.D.C.1947); *cf. Goldsmith v. United States Bd. of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1925).

**12.** The attorney-client relationship cannot, of course, be used to shield or promote illegitimate acts and nothing contained in this opinion should be interpreted as fostering such conduct. *See United States v. Gordon–Nikkar*, 518 F.2d 972, 975 (5th Cir.1975).

sible to quantify accurately,[13] it is logical to presume that the unrestricted use of PF 15 subpoenas [14] will result in the reduction of the effectiveness, in criminal cases, of those counsel who ethically survive such a procedure, and will tend to discourage attorneys from providing representation in controversial criminal cases.

Again along this vein, by the service of a PF 15 subpoena on the attorney, the attorney is converted into a possible witness in a case against his client. Because the Canons of Ethics, *see* ABA Model Code of Professional Responsibility, Disciplinary Rule 5–102(A) and (B) (1982),[15] prohibit an attorney from being a witness in a case in which he is also an attorney, counsel will possibly be required to resign as attorney for his client. Not only the right to counsel of choice under the Sixth Amendment but also due process is thus implicated, because the attorney/prosecutor is potentially given control over who shall be his attorney/adversary. For those who may look upon this discussion as one of purely theoretical value, we suggest a reading of our recently decided *United States v. Diozzi*, 807 F.2d 10 (1st Cir.1986). It is clear that courts should get an ethical handle on this situation at the earliest possible moment.

Last, but not necessarily least, is the potential for abuse that underlies the natural tendencies promoted by adversarial postures. Again with reference to recent circuit litigation, the possibility for improper use of attorney subpoenas in a PF 15 context are not far-fetched. *See In re Grand Jury Matters*, 593 F.Supp. 103, (D.N.H.),

*aff'd*, 751 F.2d 13 (1st Cir.1984) (subpoenas to uncover fee arrangements between attorneys and their clients pending trial in state court and under investigation in the district court properly quashed); *see also In re Grand Jury subpoena*, 615 F.Supp. 958 (D.Mass.1985) (subpoenas to uncover legal files relating to alleged sham marriages quashed). We cannot overlook the fact that the relationships which are subject to regulation and control by the courts are tripartite in nature. They concern not only the dealings of counsel and the courts and of counsel and their clients, but equally important, that of counsel versus counsel in their adversarial roles. It goes without saying that this last relationship includes that of the counsel/prosecutor versus the counsel/defense attorney. Any situation or condition which implicates any of these professional relationships in any of their multi-faceted possibilities and situations, is potentially subject to reasonable regulation and control by the courts. PF 15 is such a reasonable regulation created by the dynamics of changing circumstances.

Our dissenting colleague feels that PF 15 is invalid because it relates to a national problem which should be dealt with by Congress or the Supreme Court "acting at the national level ... [because] [a] district court may not effect such a fundamental change through local rules." This point of view, however, stems from a misconception of the issue before us. The fundamental underlying problem attacked by PF 15 is an ethical one brought about by the concerns we have just enumerated. The ethical rela-

---

**13.** *But see* Genego, *Risky Business: The Hazards of Being a Criminal Defense Lawyer*, 1 Crim. Just. 1 (1986); Zwerling, *Federal Grand Juries v. Attorney Independence and the Attorney–Client Privilege*, 27 Hastings L.J. 1263 (1976); Note, *Grand Jury Subpoenas of a Target's Attorney: The Need for a Preliminary Showing*, 20 Ga.L. Rev. 747 (1986).

**14.** By this we mean a subpoena under the circumstances sought to be covered by PF 15.

**15.** A.B.A. Model Code of Professional Responsibility, Disciplinary Rule 5–102(A) (1982) states:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify ... if the testimony will relate solely to an uncontested matter.

Disciplinary Rule 5–102(B) provides that:

[I]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

tionships between courts, attorneys and their clients, although obviously of interest to Congress and the Supreme Court, have been left traditionally to the primary regulation of the courts before whom those problem arise. The regulation by district courts of the ethical conduct of those who practice before it can hardly be called "a fundamental change."

There are two additional reasons why we believe the dissent to be incorrect. First, the fact that a problem is national in scope does not necessarily remove the need for local solutions. In the event that national decision makers ultimately seek to resolve the problem, the experience gained through local efforts can only make for more informed federal rulemaking. Meanwhile, in the absence of a uniform federal rule, following the well known maxim that nature abhors a vacuum, a local solution to the local version of the problem is the best that can be done.

Second, although PF 15 does have procedural as well as ethical consequences, those consequences are no more "fundamental," than the changes effected by the district court in *Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), in which the Supreme Court approved a local rule establishing six-person juries in civil cases. The Court held that the local rule was "not a 'basic procedural innovation'" proscribed to local rulemaking, because it did not "bear on the ultimate outcome of the litigation." *Id.* at 163–64 n. 23, 93 S.Ct. at 2456 n. 23. Be that as it may, it is difficult to imagine changes more "fundamental" in nature, or concerning issues in which national or constitutional interests are more implicated than a local rule changing the numerical composition of federal juries. If such local rulemaking was approved by the Court in *Colgrove,* we fail to see any reason why the ethical and pro-

cedural consequences of PF 15 should render it invalid.

Nevertheless, we must be concerned with the limitations on judicial rule-making, especially the requirement that any local rule not conflict with the Federal Rules or Federal statute. Appellants argue specifically that PF 15 conflicts with Rule 17 of the Federal Rules of Criminal Procedure.

*Rule 17 of the Federal Rules of Criminal Procedure*

One of appellants' primary attacks on PF 15 is their contention that "requiring prior judicial approval of grand jury subpoenas is inconsistent" with Rule 17 of the Fed.R. of Crim.P. Appellant's Brief at p. 18. To the extent that this argument is directed at the concept that PF 15 requires judicial approval prior to the *issuance* of a grand jury subpoena, *id.* at pp. 18–23, such a view can only result from an erroneous reading of PF 15. Nothing in PF 15 in any way inhibits a prosecutor from seeking the *issuance* of a subpoena by the clerk of the court pursuant to Fed.R.Crim.P. Rule 17(a).[16] Since PF 15 does not relate to the *issuance* of the subpoena, there is no conflict between the clerk's ministerial authority to *issue* subpoenas under Fed.R.Crim.P. 17(a), and the duties imposed on the prosecutor under the provisions PF 15 regarding the *service* of subpoena.

Clearly, the perceived problem which the language of PF 15 ("to subpoena an attorney") seeks to control is the *service* of subpoenas on attorneys by prosecutors. As has been previously discussed, *ante* at 653–55, it is this action, the *serving* of an attorney with a grand jury subpoena, which triggers the various concerns that have given rise to the enactment of PF 15, *i.e.,* the "chilling" of the attorney-client relationship, the implication of Sixth Amendment concerns, the creation of conflicting interests between an attorney and

**16.** Rule 17(a), Fed.R.Crim.P. reads:

A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein.

The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate in a proceeding before him, but it need not be under the seal of the court.

his/her client, and the possibility for adversarial abuse.

Proceeding to the crux of appellants' challenge, there is nothing in the express language of Rule 17 which specifically prohibits the ethical controls imposed upon prosecutors, *qua* members of the bar, which PF 15 establishes. In fact only Rule 17(d) and (e) are directly concerned with the serving of subpoenas, but this concern, as related to paragraph (d), deals with the persons that are authorized to serve subpoenas and the manner in which service is to be effectuated, while as to paragraph (e), the rule is limited to matters concerning the place of service.[17] No particular language in Rule 17 refers to the issue at hand.

Appellants argue, however, that the failure of Rule 17 to require any intervening judicial approval prior to the serving of subpoena manifests an intention against the establishment of such a procedure. Appellants further contend that the failure to provide for prior judicial approval as is required by PF 15, does not substantially affect the rights of the attorney/witness or his/her client, because the subpoena can always be challenged by a motion to quash, after service has been effectuated.

Interestingly enough, as can be readily seen from a reading of Rule 17, there is no specific provision in that rule for a motion to quash a subpoena *ad testificandum.* The only related provision is contained in paragraph (c) thereof, which grants the right to challenge a subpoena *duces tecum* by filing a motion to quash or modify.[18] Were we to accept appellants' arguments regarding the consequences of omission of express authority to act under this Rule, we would have to conclude that motions to quash or modify subpoenas *ad testificandum* are unavailable to witnesses or parties. Yet, that is the very remedy which appellants urge upon us in this appeal as providing adequate relief to subpoenaed attorney/witnesses, and one, which, as we all know, is routinely litigated in the various district courts. The very fact that there exists a remedy entitled "motion to quash or modify subpoena *ad testificandum,*" *sans* Rule 17, indicates that silence in the Federal rules of procedure does not necessarily mean that the courts are powerless to correct perceived problems as they arise, either by decision, or by local rule, where appropriate.

In sum we know of no prohibition, express or implied, in Rule 17, or for that matter in any Federal statutory provision referred to by appellants, which inhibits PF 15 as a local rule of the District Court.

*Our supervisory power*

Ironically, although appellants deny the supervisory power of the District Court to enact PF 15, *see* Appellants' Brief at 14–33, they press upon us the exercise of *our* supervisory authority to proscribe that Court's regulation of the members of *its* bar. *Id.* at 40–47. Particularly since that control is specifically vested by statute within the authority of each individual

---

**17.** Rules 17(d) and (e), Fed.R.Crim.P., provide:

(d) Service. A subpoena may be served by the marshal, by his deputy or by any other person who is not a party and who is not less than 18 years of age. Service of a subpoena shall be made by delivering a copy thereof to the person named and by tendering to him the fee for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered to the witness upon service of a subpoena issued in behalf of the United States or an officer or agency thereof.

(e) Place of Service.

(1) In United States. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the United States.

(2) Abroad. A subpoena directed to a witness in a foreign country shall issue under the circumstances and in the manner and be served as provided in Title 28, U.S.C., § 1783.

**18.** Rule 17(c), Fed.R.Crim.P., states:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena, if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

court, *see* 28 U.S.C. § 1654, such supervisory authority, if it exists, exists only to correct abuses of discretion. *See In re Berkan*, 648 F.2d 1386 (1st Cir.1981). *See* Beale, *Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on the Authority of the Federal Courts*, 84 Col.L.Rev. 1433 (1984). In our view PF 15, rather than constituting an abuse of discretion, is a limited, reasonable response to what appears to be a mounting professional problem. *See* citations at footnote 13, *ante.* We believe that district courts are in a better position to judge, in the first instance and absent abuse of discretion, what is the appropriate response to this problem.

Lest there be any misinterpretation about this Court's position regarding the issue before us, it goes without saying, that attorneys, just like all other persons, *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), are not above the law and are subject to its full application under appropriate circumstances. *See United States v. Twomey*, 806 F.2d 1136 (1st Cir.1986); *United States v. Carbone*, 798 F.2d 21 (1st Cir.1986); *United States v. Nieves–Pacheco*, 658 F.2d 14 (1st Cir.1981), *cert. denied*, 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982). Attorneys are not, by virtue of such status, exempt from answering to subpoenas when properly served, *including even when compliance has not been made with provisions such as PF 15.* The consequence of non-compliance with PF 15 is to be resolved in different proceedings. Such non-compliance does not excuse disobedience to lawful process.

Back on track, we find nothing in PF 15 to justify the triggering of the use of our supervisory powers. As indicated, PF 15 is closely worded in nature, and is a limited answer to an ethical problem. On its face, it is clear that it does not inhibit judicially *un* approved attorney subpoenas where the attorney/witness is *not* served "to provide evidence concerning a person who is represented by the attorney/witness."

Secondly, the interference, if any, with the prosecutorial function, is highly unobtrusive. As contemplated, the judicial approval is sought in an *ex parte* manner by the prosecutor. Considering the requirements contained in the United States Attorney's internal guidelines [19] for seeking attorney/witness subpoenas under PF 15 circumstances, it would appear that all relevant information is already readily available to the prosecutor for *ex parte* presentation to the district court.

Lastly, there is no question that the problem which has given rise to PF 15 is a mounting one. Judging alone from the considerable legal literature which has emerged on this subject, *see, ante,* footnote 13, to say nothing of the cases, *ante* at 654, the subpoenaing of attorney/witnesses under PF 15 circumstances appears to present ethical concerns of a wide-spread nature. American Bar Association, *Grand Jury Policy and Model Act* (1977–1982), Grand Jury Principles, No. 29; American Bar Association, Reports with Recommendation to the House of Delegates, Report No. 111D (February, 1986); Report of the Committee on Criminal Advocacy of the Association of the Bar of the City of New York, *The Issuance of Subpoenas Upon Lawyers in Criminal Cases by State and Federal Prosecutors: A Call for Immediate Remedial Action,* July 17, 1985. Furthermore, when we consider the admission

---

**19.** The *United States Attorneys' Manual* contains extensive guidelines concerning the issuance of such subpoenas. For instance, before issuing a subpoena for an attorney to appear before a grand jury, a federal prosecutor must determine, *inter alia,* that the "information sought is reasonably needed for the successful completion of the investigation or prosecution" (§ 9–2.-161(a)(F)(1)); that "all reasonable attempts" were made "to obtain the information from alternative sources" (§ 9–2.161(a)(B)); that the "need for the information ... outweigh[s] the potential adverse effects upon the attorney-client relationship," including the "risk that the attorney will be disqualified" (§ 9–2.-161(a)(F)(4)); and that "[t]he information sought [is] not protected by a valid claim of privilege" (§ 9–2.161(a)(F)(6)). Before issuing a subpoena to an attorney, a federal prosecutor must also first obtain approval from the Assistant Attorney General in charge of the Justice Department's Criminal Division. *United States Attorneys' Manual,* § 9–2.161(a).

by appellants to the effect that in the District of Massachusetts alone, from 50 to 100 attorney subpoenas per year have been served during the last four years under PF 15 circumstances, and we compare this figure to the criminal case load in that District of approximately 306 to 463 cases filed per year,[20] the possibility [21] arises that PF 15 situations could very well be present in from 10.7 to 32.6% of that District's criminal cases, not an insignificant proportion.

Our dissenting colleague expresses concern as to the possible effect that PF 15 might have on the grand jury's "mission" as an independent investigatory body. Again, this argument is misdirected. PF 15 is not aimed at *grand jury* action. It deals solely with prosecutorial conduct in the prosecutor's capacity as a member of the bar. If, in fact, a grand jury acting independently of any prosecutorial influence issues a subpoena against an attorney/witness, the attorney/witness must honor it, or move to quash the subpoena in an appropriate manner. Such independent action by a grand jury has no relevance to PF 15 because none of the ethical concerns previously mentioned are implicated.[22]

Far from concluding that the adoption of the local rule that incorporated PF 15 was an abuse of the district court's discretion and of the supervisory powers that it has over the members of its bar, we consider PF 15 to be a sound use of that authority. *See In re Pantojas*, 628 F.2d 701 (1st Cir. 1980).

*Conclusion*

The law and its many facets is not an empty bottle. Rather, it is one, which like good wine, is nurtured in the vintage of experience. Recent experience has required more aggressive prosecution of society's fight against the mounting evils of crime. We commend both vigorous prosecution and all legitimate means in aid of this laudable task. This, however, does not mean that society can afford a "no holds barred" approach to law enforcement lest the "solution" engender faults of an equally serious nature.

*For the reasons herein indicated, the opinion of the district court is affirmed.*

LEVIN H. CAMPBELL, Chief Judge (dissenting).

I believe that PF 15 exceeds the rulemaking authority of a federal district court. Like my brethren, I shall assume that the United States District Court for the District of Massachusetts intended to incorporate as its own local rule the so-called ethical rule promulgated by the Supreme Judicial Court of Massachusetts. Hence, the primary question is not whether a state rule must yield to the Supremacy Clause but whether a single federal district court is empowered to adopt a rule like this.

I think not. To condition a grand jury subpoena on a court's prior approval reduces the grand jury's traditional power to call those witnesses it pleases. The Su-

---

**20.** Criminal cases filed in the District of Massachusetts have been 306 (1983), 379 (1984), 401 (1985), and 463 (1986). *See Annual Report of the Director*, Administrative Office of the United States Courts, Years 1983–86.

**21.** This is if we assume the worst statistical situation for appellants, with a distribution of one PF 15 subpoena per case.

**22.** Even if we accept the dissent's premise that PF 15 would, in some cases, limit a grand jury's subpoena power, this would not invalidate the rule. The dissent *asserts* that the grand jury's subpoena power is "uninhibited," post at 30, but it quotes no case law using that kind of language. Indeed, the dissent, in trying to support its assertion that the grand jury's subpoena power is "unencumbered," post at 34, relies on language from this circuit which suggests just the opposite: "The grand jury's right to every man's

evidence is substantively limited only by express 'constitutional, common-law or statutory privileges.'" *In re Grand Jury Matters*, 751 F.2d 13, 17 (1st Cir.1984), (*quoting Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972)). The dissent's assertion of an unencumbered power for the grand jury is undercut by the quoted passage that begins "the grand jury's [power] ... is substantively limited...." Not only is the grand jury's power limited, it is limited by common-law or statutory privileges. PF 15 arose out of concern over a prosecution practice that threatened to erode the attorney-client privilege and an accused's sixth amendment rights. Accordingly, if PF 15 does limit a grand jury's subpoena power, it does so for a reason sanctioned by the Supreme Court and this Circuit.

preme Court in analogous circumstances, and two circuit courts, in directly comparable circumstances, have ruled that to go so far is an improper interference with a grand jury's historical right to every man's evidence. *See* section II, below. Whether or not these precedents actually invalidate PF 15 is not the point. They show at very least that PF 15 operates in a policy area too sensitive, important and controversial to be regulated at a local district court level. Regardless of the merits of the rule, it is a major change in grand jury practice and procedure that should be promulgated only through an amendment to the federal criminal rules, or by Congress through legislation.[23]

### I.

A district court's power to adopt local rules touching on criminal matters is set out in Fed.R.Crim.P. 57, which provides,

Each district court ... may from time to time ... make and amend rules governing its practice *not inconsistent with these rules.*

(Emphasis provided.)

Rule 57 and the other federal criminal rules (including Rule 6, pertaining to grand juries,[24] and Rule 17, pertaining to subpoenas) were enacted under authority of a statute, 18 U.S.C. §§ 3771–3772 (1984), by which Congress specifically empowered the Supreme Court to prescribe rules of pleading, practice and procedure governing criminal cases for the district courts. Federal and local rulemaking further rest upon authority granted by 28 U.S.C. § 2071 (1982), which delegates to the federal courts the power "from time to time to prescribe rules for the conduct of their business." Such rules must be "consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

Local rules, therefore, must be consistent both with federal statutory and constitutional law (including judicial interpretations thereof), and with the Federal Rules of Criminal Procedure, which are the primary means for regulating practice and procedure in the district courts. The Advisory Committee's comments on Fed.R. Crim.P. 57 emphasize that local rulemaking is necessarily meant to be of narrow scope. Describing the Federal Rules of Criminal Procedure as "intended to constitute a comprehensive procedural code for criminal cases in the Federal courts" the Advisory Committee goes on to say that,

Nevertheless it seemed best not to endeavor to prescribe a uniform practice as to *some matters of detail,* but to leave the individual courts free to regulate them, either by local rules or by usage. Among such matters are the mode of impaneling a jury, the manner and order of interposing challenges to jurors, the manner of selecting the foreman of a trial jury ... *and other similar details.*

(Emphasis supplied.) This language makes clear that local rules were never conceived to be a means for changing policies properly regulated at a federal level. Rather they are to address "some matters of detail" left open by the criminal rules where uniformity is not required.

For reasons given in section II below, I believe the present novel limitation upon a

---

**23.** I am aware that PF 15 is not designed to undercut the grand jury but to make sure that a defendant's right to counsel is properly respected. It seeks to strike a new balance between the grand jury's and the prosecutor's right of access to evidence, and a defendant's right to the full protection of his counsel. It may be time for such a realignment; I do not say it is not. My view is merely that this sort of rebalancing of fundamental rights is work either for the Supreme Court, under its rulemaking powers, or for the Congress. It is not the sort of task for which individual district courts were granted their limited rulemaking powers. If district courts can do this, why should not each district court adopt different procedural rules—additional discovery practices, for example, or additional procedural devices, such as demurrers? Clearly the Supreme Court was granted the power to prescribe uniform rules of pleading, practice and procedure for the district courts in order to avoid just this sort of variance in practice and procedure among the different courts. The present issue is one where uniformity, as well as the protections of a national rulemaking procedure, are called for.

**24.** Grand jury practice and procedure is regulated by Fed.R.Crim.P. 6 and also by a number of statutes. *See, e.g.,* 18 U.S.C. §§ 3321, 1331–34, etc.

grand jury's subpoena power is much too controversial and delicate to be the sort of "matter of detail" that fits within a district court's local rulemaking power. Before turning to these reasons, let me first refer to my colleagues' argument that PF 15 is not "inconsistent" with the federal criminal rules because it does not literally contravene Fed.R.Civ.P. 17(a) (which unconditionally empowers the clerk to *issue* subpoenas). My colleagues find no inconsistency because PF 15 does not call for court approval before issuance of a grand jury subpoena—it requires court approval only before the prosecutor *serves* the subpoena. This is far too fine a distinction to provide a convincing rationale. It is, after all, the Supreme Court, not individual local courts, to which Congress has delegated the primary power to prescribe rules of pleading, practice and procedures for the district courts. *See* 18 U.S.C. §§ 3771–3772 (1984). Mere absence of a clash between the strict letter of the federal criminal rules and PF 15 does not resolve the question of inconsistency. A local rule may be inconsistent if it is discordant with policies *implicit* as well as explicit in the federal rules. It may likewise be *ultra vires* if out of harmony with policies in statutes or in controlling interpretations by the courts. *See* 28 U.S.C. § 2071 (1982). Thus "inconsistency" will exist where a local rule legislates in an area in which the federal rules are silent *and* the surrounding circumstances show that such silence manifested an intent by the Supreme Court *not* to regulate further. This is the situation here. Neither Fed.R.Crim.P. 17 nor any other provision in the federal criminal rules or statutes, provides for judicial approval of a grand jury subpoena before it may be served, while history and the case law, as hereinafter discussed, make it clear that a grand jury's *uninhibited* ability to call the witnesses it chooses is a right entitled to the utmost

respect. In such circumstances, the rules' silence is most reasonably interpreted as forbidding further regulation by any body other than the Supreme Court or Congress.

That literal conflict is not the sole ground for "inconsistency" under Fed.R. Civ.P. 57 was made abundantly plain by the Supreme Court in *Miner v. Atlass*, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960). In that case, despite the absence of a direct conflict with any General Admiralty Rule, the Court struck down a local admiralty rule that allowed the district court to order the taking of oral depositions as part of the discovery process. Like the Federal Rules of Criminal Procedure, the General Admiralty Rules authorized district courts " 'to regulate their practice in such a manner as they deem most expedient for the due administration of justice, *provided the same are not inconsistent with these rules.' " Id.* at 647, 80 S.Ct. at 1304, quoting General Admiralty Rule 44 (emphasis in original). Although there was no direct conflict with any General Admiralty Rule, the Court, focusing on the history of and policies implicit in those rules, rejected the local rule as "not consistent" with the General Rules. The Court doubted that "a change so basic as this [should] be effectuated through the local rule-making power," stating that such fundamental procedural innovations should be introduced "only after mature consideration of informed opinion from all relevant quarters, with all the opportunities for comprehensive and integrated treatment which such consideration affords." 363 U.S. at 650, 80 S.Ct. at 1306. *See In re Grand Jury Proceedings*, 558 F.Supp. 532, 535–36 (W.D.Va.1983) (courts should exercise restraint in adopting rules touching on important policy issues) (*citing* J. Weinstein, *Reform of Federal Court Rulemaking Procedures*, 76 Colum.L.Rev. 905, 930 (1976)).[25]

---

**25.** It has been repeatedly emphasized that court rules are adopted under a limited congressional grant of legislative power. *See, e.g., Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941); *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 41–42, 6 L.Ed. 253 (1825); J. Weinstein, *Reform of Federal Court Rulemaking Procedures*, 76 Colum.L.Rev. 905, 927–31 (1976)

("the federal courts have recognized that rulemaking is ultimately a legislative power residing in Congress, although delegated in large measure to the courts"). Courts must construe this delegation of rulemaking power strictly, including the requirement that local rules encroach neither upon federal statutory law nor upon the rules of civil and criminal procedure promul-

In the present case, proponents of PF 15 attempt to minimize its importance by describing it as only a minor procedural device providing a structure for dealing with the special problems of attorney subpoenas. I do not question that the subpoenaing of attorneys may, in some instances, create a serious problem (although I think the extent to which there are serious abuses requiring a special rule can be better ascertained at the level of national rulemaking than locally). *See* note 23, *supra*. But I do question that a special screening procedure can be properly established other than by an amendment to the federal criminal rules or by legislation. Were we writing on a clean slate, perhaps a different view would be in order. But we are not writing on a clean slate; the Supreme Court and other courts, *infra*, have made it clear that any prior judicial screening of subpoenas impacts seriously and questionably upon the protected information-gathering powers of the grand jury. PF 15 is *at very least* in an area so controversial and sensitive as to be well beyond the "matters of detail" which Rule 57 allows a single district court to regulate by local rule.

## II.

I turn now to the precedents showing that the silence of the federal rules and of Congress is not an invitation to local rulemaking but rather indicates, in this context, that local regulation is foreclosed. These precedents stem from the deep respect and deference accorded to the independence of the grand jury.

The grand jury is a part of neither the executive nor judicial branch. Although closely related to both, it is an entity with independent constitutional status. *See Nixon v. Sirica*, 487 F.2d 700, 712 n. 54 (D.C.Cir.1973). Its task, of course, is to inquire into the existence of possible criminal conduct. Given this mission, the grand jury has been instilled with broad investigatory powers, foremost of which is its right to every man's evidence. *United States v. Dionisio*, 410 U.S. 1, 9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973); *In re Grand Jury Matters*, 751 F.2d 13, 16 (1st Cir.1984). In *United States v. Mandujano*, 425 U.S. 564, 571, 96 S.Ct. 1768, 1774, 48 L.Ed.2d 212 (1976), the Supreme Court stated,

> the grand jury's investigative power must be broad if its public responsibility is adequately to be discharged. Indispensable to the exercise of its power is the authority to compel the attendance and the testimony of witnesses, and to require the production of evidence.

(Citations omitted.)

The grand jury's *unencumbered* power to compel people to appear before it has deep historical roots. *See Blair v. United States*, 250 U.S. 273, 280, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919). "[T]he grand jury's right to every man's evidence is substantively limited only by express 'constitutional, common-law or statutory privileges.'" *In re Grand Jury Matters*, 751 F.2d 13, 17 (1st Cir.1984), *quoting Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972).

PF 15's requirement that a prosecutor not subpoena certain lawyers without prior judicial approval is a significant limitation upon the grand jury's right to every man's evidence. It both imposes a procedural block and raises the likelihood that, in deciding whether to approve or disapprove a subpoena, an individual judge will impose substantive limitations of his own devising going beyond the "express 'constitutional, common-law or statutory privileges'" currently recognized.[26] *Id.* It forces the

---

gated by the Supreme Court as part of a national rulemaking process. *See, e.g., Carter v. Clark*, 616 F.2d 228 (5th Cir.1980) (local rule requiring verification of allegations in prisoner complaints held to be inconsistent with policy reflected in federal statute providing that written declarations made under penalty of perjury were permissible in lieu of sworn affidavits); *Hawes v. Club Ecuestre el Comandante*, 535 F.2d 140, 144 (1st Cir.1976) (local rule may not "subvert the overall purpose of the [federal] rules").

**26.** PF 15 sets out no standard by which a judge is to determine whether or not to allow an attorney to be subpoenaed. As pointed out below, the screening provision in PF 15 does not necessarily dovetail with any particular privilege.

grand jury to conform its investigatory powers in advance to the predilections of a judge.

The Supreme Court has refused in the past to compel the grand jury to submit to prior judicial screening of its subpoena power. In *Branzburg v. Hayes*, the Court rejected two journalists' contention that compelling them to appear and testify before a grand jury would violate the First Amendment's freedom of speech and press guarantees. The newsmen, it will be noted, did not claim an absolute privilege. As here, they argued only that a reporter should not be forced to appear and testify until the government shows that his testimony is relevant and unavailable from other sources. 408 U.S. at 680. The Court found this argument unpersuasive: " '[The grand jury] is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation....' " *Id.* at 688, 92 S.Ct. at 2660, *quoting Blair v. United States*, 250 U.S. at 282, 39 S.Ct. at 471; *see also United States .v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (no showing of need required before grand jury may subpoena witnesses for purposes of obtaining voice exemplar).

None of the provisions in the Federal Rules of Criminal Procedure (nor in any statute) which deal with grand juries and subpoenas in any way hint that the district court is entitled to exercise a power to screen subpoenas, as PF 15 prescribes, nor is there historical precedent for this being done. Rather, the federal rules assign to the district courts a largely ministerial role in the subpoena process.[27] *See* Fed.R. Crim.P. 6 & 17. PF 15 intrudes upon this open landscape by assigning to the district court a new role in the subpoena process. Whether a good or bad concept, given the case law discussed, PF 15 is clearly inconsistent with the degree of independence currently granted to grand juries under the Federal Rules of Criminal Procedure.

As indicated, the grand jury's power to compel every man's evidence has traditionally been limited only by "express constitutional, common-law or statutory privileges." *In re Grand Jury Matters*, 751 F.2d at 17. Here, the privilege most freely invoked as supporting PF 15 is the Sixth Amendment right to counsel. The Supreme Court, however, has determined that Sixth Amendment rights do not attach until "the time that adversary judicial proceedings have been initiated." *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972).[28] PF 15 thus cannot be viewed as a procedural device intended merely to implement existing privileges. It is clearly something new and different—with substantive as well as procedural implications of its own, since in determining whether to permit the subpoenaing of an attorney, each judge must formulate new criteria outside the current privileges. *See* note 26, *supra.*

That PF 15 is no mere routine procedural device, but is in fact a novel and controversial inroad upon present federal practice and procedure, is further demonstrated by

**27.** The federal rules expressly allow the district court to quash an oppressive subpoena *duces tecum*, but make no provision for screening in advance of service. Fed.R.Crim.P. 17(c). There is no corresponding grant of express authority to quash a subpoena *ad testificandum*, although, as the majority notes, some courts have assumed the existence of such authority to quash. Other courts, in what Professor Wright has called the "better approach" and in recognition of the limited power of courts to control who *testifies* before the grand jury, have found that they lacked the power to quash subpoenas *ad testificandum*. *See* 2 C. Wright, *Federal Practice & Procedure*, § 273 at 149 & n. 12, § 275 at Supp. 16 & n. 7.1 (1982 & Supp.1986) (compiling cases).

**28.** Although his client's Sixth Amendment rights have not attached, an attorney testifying before a grand jury may assert an attorney-client privilege to avoid revealing protected confidences. *See, e.g., In re Grand Jury Proceedings in the Matter of Freeman*, 708 F.2d 1571, 1574–75 (11th Cir.1983). It is well established, however, that the privilege does not excuse a witness from the duty first to appear and claim the privilege in response to particular questions. *In re Certain Complaints under Investigation*, 783 F.2d 1488, 1518 (11th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986).

the fact that two other circuits, perceiving a fundamental inconsistency between the grand jury's mission and a court-approved showing of need, have both rejected such approval in the specific context before us, the attorney-witness. In *In re Grand Jury Subpoena Served upon Doe*, 781 F.2d 238, 248 (2d Cir.1985) (en banc), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986), the Second Circuit said,

> To impose additional requirements that the government show its need for the information sought and that the attorney is the only source for that information would hamper severely the investigative function of the grand jury, if not stop the grand jury 'dead in its tracks.'

The Seventh Circuit has stated that to require a showing of need before subpoenaing attorneys would run contrary to the method by which the grand jury operates.

> A grand jury tracks down leads, and even innocent-looking information may be useful. If the grand jury has some information on a subject, it may seek more to confirm or contradict what it has. How much information is "enough" is a matter for the judgment of the grand jury and the prosecutors rather than the courts.

*In re Klein*, 776 F.2d 628, 632 (7th Cir. 1985). As a grand jury may be pursuing a number of interrelated criminal activities, the relevance of any one piece of testimony or evidence may not be apparent until the end of the investigation. *See United States v. Dionisio*, 410 U.S. at 16, 93 S.Ct. at 772. It may, therefore, be difficult or impossible to articulate the need for certain testimony at a midinvestigation hearing.

The Supreme Court in *Dionisio* expressed the similar view that, "Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." 410 U.S. at 17, 93 S.Ct. at 773. Given the Court's view in *Dionisio* and *Branzburg, supra,* and the above circuit opinions, it is obvious at very least that PF 15 ventures into difficult and controversial territory. This is not to say that a rule of the type set out in PF 15 may never be adopted by the Congress or the Supreme Court. *Compare Burlington Northern Railroad Company v. Woods*, —— U.S. ——, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). Perhaps when confronted with the evidence which proponents of PF 15 submit, the Court would modify the views projected in *Branzburg* and *Dionisio*, so as to accommodate such a rule. *See note 23, supra.* My point is simply that the policy implications of the rule far exceed what a single district court may properly adopt on its own in the guise of a local rule. What is involved is no mere local procedural supplement but a controversial change in federal grand jury practice and procedure, which should be adopted only at the national level after "mature consideration of informed opinion from all relevant quarters." *Miner v. Atlass*, 363 U.S. at 650, 80 S.Ct. at 1306.[29]

Whatever the merits of PF 15—upon which I do not pass judgment—it legislates in an area far beyond Congress's and the Supreme Court's limited delegation of rulemaking authority to local tribunals. PF 15 is not simply some minor procedural or "ethical" variation. It marks a dramatic and controversial departure from the historically limited power of the courts to supervise the grand jury, interposing a step that, in very similar contexts, both the Supreme Court and circuit courts have, so far, disallowed.

If a rule like PF 15 is required, Congress or, at least, the Supreme Court under its rulemaking authority, acting at the national level, should promulgate it. A district

---

**29.** I recognize, as my colleagues argue, that the Supreme Court allowed district courts to regulate by local rule the size of civil petit juries—no small matter, to be sure. *Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973). But there was a tradition, lacking here, of local control over jury arrangements. More important, there was no such history of questioning by the Court as has been noted here to the innovation in question. This is not an area where it can be reasonably presumed that the Court would be satisfied to leave the matter to local rulemaking.

court may not effect such a fundamental change through local rules.

Believing as I do that the district court exceeded its rulemaking power, I also believe for like reasons that the Supremacy Clause prevents Massachusetts from ever enforcing its PF 15 against a federal prosecutor.

For these reasons, I dissent.