In re GRAND JURY PROCEEDINGS.

Civ. A. No. 83–M–25–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 1, 1983.

during the course of an ongoing tax fraud investigation. The government, citing the paramount need for secrecy in grand jury proceedings, seeks an injunction or, preferably, a local rule to prevent the practices complained of.

The parties filed briefs and affidavits in support of their positions, and orally argued before this court on February 17, 1983. The matter is now ready for disposition.

### I.

Respondent contends at the outset that the matter is moot, and indicates that the grand jury investigation at issue is, for the time being, complete. The government concedes this fact, but with the qualification that it may call more witnesses at a later time.

■ Under these facts, the case is not moot. The government seeks relief not only for any acts currently being undertaken, but also for acts to be performed in the future. A reasonable probability exists that the respondent will continue to "debrief" witnesses in the future should the occasion arise. Accordingly, jurisdiction is vested in this court. *United States v. Trans-Missouri Freight Association,* 166 U.S. 290, 307–10, 17 S.Ct. 540, 546–47, 41 L.Ed. 1007 (1897). *See, generally,* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's, the Federal Courts and the Federal System, 110–11 (2d ed. 1973 & Supp.1981).

Anthony Troy, Mays, Valentine, Davenport & Moore, Richmond, Va., for respondent.

Samuel G. Wilson, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., amicus curiae.

John Perry Alderman, U.S. Atty., Karen Breeding Peters, Thomas J. Bondurant, Jr., Asst. U.S. Attys., Roanoke, Va., for United States.

## MEMORANDUM OPINION

TURK, Chief Judge.

The United States Attorney filed a "Motion to Enjoin Violations of Grand Jury Secrecy" on January 18, 1983 against respondent, a law firm, alleging that the latter was systematically "debriefing" witnesses appearing before the Grand Jury

### II.

A second threshold question relates to this court's authority to issue the relief sought. The court tends to agree, and respondent does not seriously contest, that 28 U.S.C. § 1651[1] would grant this power were the court inclined to exercise it. *See United States v. New York Telephone Co.,*

---

1. This section provides:

    (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aide of their respective jurisdictions and agreeable to the usages and principles of law.

    (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

434 U.S. 159, 171–74, 98 S.Ct. 364, 372–73, 54 L.Ed.2d 376 (1977). A square holding is not required on this point, however, because of the conclusion that the relief sought is not warranted. *See* part III, *infra.*

The government also cites *Fed.R.Crim.P.* 57 in support of this court's power to promulgate a local rule pertaining to this subject matter. As to this, *see* part IV, *infra.*

### III.

The government argues that the paramount need for secrecy in grand jury proceedings commands that the relief sought be granted. Respondent, on the other hand, contends that *Fed.R.Crim.P.* 6(e)(2) prohibits it. That rule, while imposing an obligation of secrecy on other parties to the proceeding, does not do so with regard to witnesses, and provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with this rule." The Advisory Committee Note following Rule 6(e) explains this provision as follows:

> The rule does not impose any obligation of secrecy on witnesses. The existing practice on this point varies among the districts. The seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate.

Respondent relies heavily on *In re Grand Jury Summoned October 12, 1970,* 321 F.Supp. 238 (N.D.Ohio 1970). In that case, the court restrained government attorneys from in effect imposing a "veil of secrecy" over witnesses by advising them that, "while they were free to discuss their testimony with whomever they pleased, they were to report back to the grand jury in the event they were interrogated regarding the questions presented to them by the grand jury." 321 F.Supp. at 239. The court stated: "The cases show that the secrecy of grand jury proceedings may not be imposed upon witnesses who appear before a grand jury; they may be interviewed after their appearance and repeat what they said before the grand jury or otherwise relate their knowledge on the subject of their inquiry." 321 F.Supp. at 240.

■ That no obligation of secrecy may be imposed on grand jury witnesses clearly does not control this matter. Respondent contends merely that, because the witnesses are free to speak with whom they choose, "*[a] fortiori* attorneys are free to interview witnesses following their testimony if they consent." *Respondent's Memorandum* at 9. The conclusion, however, does not necessarily follow from the premise. As the Fourth Circuit held in *In re Swearingen Aviation Corp.,* 605 F.2d 125 (4th Cir.1979), the rule is intended to benefit witnesses, not targets of grand jury investigations. Accordingly, subjects of grand jury investigations have no standing to challenge the validity of *ex parte* court orders prohibiting witnesses from disclosing certain information to them. *Id.* at 126–27.[2]

The government counters that the requirement of grand jury secrecy is great. This is beyond dispute. *See, e.g., Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). *See, generally,* Pickholz & Pickholz, *Grand Jury Secrecy and the Administrative Agency: Balancing Effective Prosecution of White Collar Crime Against Traditional Safeguards,* 36 Wash. & Lee L.Rev. 1027 (1979). To be weighed against this policy, however, is the First Amendment rights of respondent to communicate with whom it chooses.[3] Respondent's related rights of

---

**2.** Respondent relies on language in *Swearingen* to the effect that the subjects of investigation were entitled to contact witnesses to obtain other information. 605 F.2d at 127. The court, however, was only construing the district court's orders in that case, and did not discuss the propriety of the latter's ruling.

**3.** Respondent relies mainly on the witness' rights to communicate with counsel. Ordinari-

ly, one has no standing to assert the rights of others on one's own behalf. The doctrine, however, is riddled with exceptions. *See, generally,* Note, *Standing to Assert Constitutional Jus Terti,* 88 Harv.L.Rev. 423 (1974). The court prefers to analyze the instant matter in terms of Respondent's rights to free speech and association.

free speech and association are inconsistent with the relief sought by the government. *See, generally, N.A.A.C.P. v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Shelton v. Tucker,* 364 U.S. 479, 485–87, 81 S.Ct. 247, 250–51, 5 L.Ed.2d 231 (1960).

■ To accommodate the values and interests found on each side of the argument, a balancing approach is dictated. An injunction, which would be in effect a disfavored "prior restraint," is not warranted at this point, especially since the government has not demonstrated that the efficacy of the grand jury proceeding has been affirmatively harmed. On the other hand, the government has an interest in guarding against the chilling effect that respondent's practices are likely to have upon potential witnesses. Accordingly, the government attorneys may tell witnesses that, although they have a right to discuss their testimony with third parties, they may also refuse to do so. In addition, the government may indicate to witnesses that it would prefer that they not discuss their testimony with third parties (apart from their own attorneys), although they may do so if they choose. Such a course of action would not violate the rule 6(e) proscription against imposing an obligation of secrecy on witnesses; it would merely convey the government's desires.

### IV.

The government also seeks the promulgation of a local rule prohibiting contact by attorneys with witnesses.[4] The government maintains that *Fed.R.Crim.P.* 57(a) grants this power. It provides:

Rules made by district courts for the conduct of criminal proceedings shall not be inconsistent with these rules. Copies of all rules made by a district court shall upon their promulgation be furnished to the Administrative Office of the United States Courts. The clerk shall make appropriate arrangements, subject to the approval of the Director of the Administrative Office of the United States Courts, to the end that all rules made as provided herein be published promptly and that copies of them be available to the public.

This rule appears to be a narrowing of the general grant in 28 U.S.C. § 2071, which provides: "The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

The Second Circuit approved a local rule, pursuant to which a fine was assessed against counsel for delaying court proceedings. *In re Sutter,* 543 F.2d 1030 (1976). The Third Circuit, however, invalidated a similar rule, holding that "the local rule-making power, while not limited to the trivial, cannot extend to basic disciplinary innovations requiring a uniform approach." *Gamble v. Pope & Talbot, Inc.,* 307 F.2d 729 (3d Cir.) (*per curiam*), cert. denied sub nom. *United States District Court v. Mahoney,* 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962).

■ The grant of authority found in § 2071 allows courts to make "rules of practice," but not "rules of law." *Saylor v. Taylor,* 77 F. 476, 480 (4th Cir.1896) (construing predecessor statute). The rule sought by the government would be more "substantive" than "procedural" in its effect, and is not authorized by the statute.

■ Further, the rulemaking power found in § 2071, Rule 57, and other provisions of law, represents a departure from the basic rule that federal courts decide only cases and controversies and not render "advisory opinions." *See* Weinstein, *Reform of Federal Court Rulemaking Procedures,* 76 Colum.L.Rev. 905, 914–16 (1976) (hereinafter cited as "Weinstein"). Accordingly, the rulemaking power of the federal courts is appropriately viewed as "a legisla-

---

4. Several districts have promulgated such rules, including the District of New Hampshire, the Southern District of Iowa, the Eastern District of Louisiana, and the Northern District of Georgia.

tive delegation." Weinstein at 929, *citing Wayman v. Southard,* 23 U.S. (10 Wheat.) 1, 6 L.Ed. 253 (1825). Congress delegated the power in order to avail itself of courts' expertise in the area of litigation; thus, any Congressional review of court-made rules should be limited to broad issues of policy. Weinstein at 929–30. However:

> If Congress is to exercise restraint, so, too, must the courts. Where substantial substantive policies are at stake or fundamental jurisdictional issues are raised, the courts should refrain from treating the matter by rules, but should, through the Judicial Conference or groups such as the American Bar Association, seek appropriate legislation.

*Id.* at 930.

 Because the courts' rulemaking power represents a deviation from the traditional separation of powers doctrine, there are serious objections to its use in any case. *See Rules of Civil Procedure, Order,* 374 U.S. 865, 865–70 (1963) (statement of Black and Douglas, JJ.); *Rules of Criminal Procedure, Order,* 323 U.S. 821, 821–23 (1944) (memorandum of Frankfurter, J.). These considerations indicate that the Weinstein view is correct. Courts ought not to adopt rules relating to important matters requiring deliberation and factfinding.

This is especially true at the district court level. Local rules are usually promulgated without the aid of an advisory committee, without advance publication, and without affording interested parties an opportunity to be heard. Weinstein at 944–54. This court has no existing mechanism to provide these safeguards, which ordinarily inhere in legislative-type decisionmaking. *See* Note, *Rule 83 and the Local Federal Rules,* 67 Colum.L.Rev. 1251 (1967) for a critique of local rulemaking. *See also* Comment, *The Local Rules of Civil Procedure in the Federal District Courts—A Survey,* 1966 Duke L.J. 1011.

For these reasons, restraint is mandated in this situation. A rule restricting the rights of all attorneys to contact and interview willing witnesses would require fundamental policy decisions of a kind not amenable to consideration by this court. Congressional action or, at the very least, a uniform rule promulgated by the Supreme Court (which is counseled by an advisory committee) is required.

Accordingly, the motion filed by the government shall be denied in an Order entered this date.

### FINAL JUDGMENT AND ORDER

In accordance with the Memorandum Opinion filed this day, it is hereby

### ADJUDGED and ORDERED

that the motion filed by the United States is hereby DENIED. This matter is stricken from the docket of this court, but the file is to remain sealed.