**UNITED STATES of America, et al., Plaintiffs, Appellants,**

**v.**

**Daniel KLUBOCK, et al., Defendants, Appellees.**

No. 86–1413.

United States Court of Appeals, First Circuit.

Heard En Banc June 3, 1987.

Decided Oct. 30, 1987.

Sara Criscitelli, Dept. of Justice, Washington, D.C., with whom Robert S. Mueller, Acting U.S. Atty., Boston, Mass., was on brief, for plaintiffs, appellants.

Michael S. Greco, with whom Richard W. Renehan, David A. Hoffman and Hill & Barlow, Boston, Mass., were on brief, for defendants, appellees Massachusetts Bd. of Bar Overseers, and Bar Counsel, Daniel Klubock.

Max D. Stern, with whom Patricia Garin, Stern & Shapiro, Jeanne Baker, Silverglate, Gertner, Baker, Fine, Good and Mizner, Matthew H. Feinberg, Segal, Moran and Feinberg, Benjamin Fierro, III, Edward J. Smith, DiCara, Selig, Sawyer & Holt, Peter W. Agnes, Jr., Boston, Mass., Kari Tannenbaum and Rona Gregory were on brief, for intervenors Boston Bar Ass'n, Massachu-

setts Ass'n of Criminal Defense Lawyers and Massachusetts Bar Ass'n.

Before CAMPBELL, Chief Judge, COFFIN, BOWNES, BREYER, TORRUELLA and SELYA, Circuit Judges.

## OPINION EN BANC
PER CURIAM.

In this challenge to a local rule adopted by the District Court for the District of Massachusetts, the district court sustained the validity of the rule. *United States v. Klubock*, 639 F.Supp. 117 (D. Mass.1986). A divided panel of this court affirmed in an opinion dated March 25, 1987. Upon granting the petition for rehearing en banc, this court, as is customary, vacated the panel's judgment and withdrew the panel opinion. Upon en banc consideration, this court is divided 3–3. Therefore, the decision of the district court is affirmed by an equally divided court.

We reproduce below (1) the en banc opinion of Judge Torruella in which Judges Coffin and Bownes join; (2) the dissenting opinion of Chief Judge Campbell; and (3) the dissenting opinion of Judge Breyer in which Judge Selya joins.

We also at this time reproduce for publication with the en banc opinions, an amended version of the original panel opinion and dissent, 832 F.2d 649. While the panel opinions no longer have standing on their own, the members of the en banc court make reference to them in the course of their opinions and hence they are issued to supplement the en banc opinions.

TORRUELLA, Circuit Judge.

We granted appellants' petition for rehearing *en banc* to consider two issues: "1. Whether the district court, under its local rule-making authority, can require prior judicial approval before grand jury subpoenas may be served on attorneys in light of Fed.R.Crim.P. 17's provision for the non-discretionary issuance of subpoenas. 2. Whether the Supremacy Clause bars enforcement of a state attorney disciplinary rule that would regulate federal prosecu-

tors' conduct in connection with federal grand juries." *See* Petition For Rehearing With Suggestion for Rehearing En Banc, p. 1. These issues are directed at the merits of the issues raised, argued and briefed both before the district court and on appeal. Although they are a repetition of what this Court has already decided in its panel opinion, it is these issues that are properly before the *en banc* court.

Two of our dissenting colleagues, Judges Breyer and Selya, however, in what can only be described as a different tack, perhaps even a tack out to sea, suggest that this appeal be jettisoned to consider an issue which was never proposed, litigated or considered by the parties or the district court at the trial level, was never preserved, briefed or argued on appeal before this court's panel or the *en banc* court, and was in fact specifically disavowed by appellant during oral argument before the latter. In his separate dissent, Chief Judge Campbell expounds upon his original panel dissent. Since we abide by the majority panel opinion, we do not find it necessary to address, in detail, our differences with the Chief Judge's expanded *en banc* dissent. The "issue" raised by Judges Breyer and Selya is whether there was a failure to give public notice and an opportunity for comment before adoption of the local rule challenged by appellants, as required by Fed.R.Crim.P. 57. Certainly it is ironic that our dissenting brethren would consider invalidating Local Rule 5(d)(4)(B) due to inadequate notice and comment, when the parties here neither noticed nor commented upon the issue in their briefs to the panel or to the court *en banc*.

If there is anything to be said about the adversary system, particularly when carried out by advocates as competent as those appearing throughout this case, it is that it would be unusual indeed for such an issue to have escaped the crucible of contentious litigation if there is a factual basis to be developed on the record in support thereof. The complete silence of both appellants and appellees regarding the adequacy of the opportunity to provide comment is particularly important, since the

parties to this lawsuit would be expected to provide the bulk of the commentary on PF 15. If either the United States Attorney or the Massachusetts Bar felt deprived of an adequate opportunity to comment on the rule, it is certain that, given the competence of counsel for both sides, the issue would have been raised at the trial level. Thus, it is odd that the dissenters would decide this case on the basis of an issue that so many skilled lawyers saw fit to ignore.

It is elementary that an allegation such as that made by the dissenters with respect to Fed.R.Crim.P. 57 requires not only that a specific assertion to such effect be made by the moving party at the *trial* level, but also that a record in support be established, with due opportunity to opposing parties to refute this contention. We are not dealing here with a jurisdiction issue, which can be raised by the court, or by any party, at any level of proceedings. This is an issue of substance which has never been advanced by any of the parties to this litigation. Federal appellate courts are not knights errant in search of a cause or a *cour de cassation* with unlimited powers of review. We are bound by the issues that have been properly litigated and preserved before the district court, and then raised and briefed on appeal. To consider the issue raised by Judges Breyer and Selya is to stray far afield from the constraints imposed by Article III and the adversary system. Our job is to decide the dispute presented to us by the parties, not to follow a judicial penchant which involves neither a case nor a controversy.

Before we leave this matter entirely it should be pointed out that Rule 57 only

requires "appropriate public notice and an opportunity to comment."[1] What scant record exists on this subject would lead us to conclude that appellants had such notice and opportunity. The dissent notes that on October 7, 1985, Local Rule 5(d)(4)(B) was proposed by the district court and circulated for comment. *See infra* p. 671. Contrary to the dissent of Judges Breyer and Selya, however, we do not agree that prior to its amendment in June, 1986, there was ambiguity as to whether Rule 5(d)(4)(B) incorporated S.J.C. Rule 3:08. This is clearly established by the fact that, rather than comment on Rule 5(d)(4)(B), the United States Attorney sought an exemption from PF 15. Thereafter the Massachusetts Bar Association and the Massachusetts Criminal Defense Lawyers indicated that they would comment if the district court was inclined to grant the United States Attorney's requested exemption. The district court denied this exemption and thereafter no comments were submitted. Rule 57, of course, does not require *comment*, only the *opportunity* to comment.

In view of this history it is not surprising that appellants have not pressed this issue. The United States Attorney and his colleagues, the only really interested parties affected by PF 15, had notice and an opportunity to comment, but rather than submit a detailed, substantive critique of PF 15, they sought a blanket exemption from the rule.[2] They had their turn at bat and struck out. They are not entitled, on appeal, to another turn at the plate. We conclude, therefore, that the Rule 57 question is an appellate non-issue.

On the merits of the *en banc* issues, Judge Breyer's dissent raises a series of

---

1. Fed.R.Crim.P. 57 provides:

    Each district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, make and amend rules governing its practice not inconsistent with these rules. A local rule so adopted shall take effect upon the date specified by the district court and shall remain in effect unless amended by the district court or abrogated by the judicial council of the circuit in which the district is located. Copies of the rules and amendments so made by any district court

shall upon their promulgation be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public. In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.

2. In light of the frontal attack embodied in the litigation, it is not surprising that the district court suspended any further consideration of the rule.

questions which are in effect directed at making this local rule a "better" rule. *See infra* pp. 671–75. This approach misses the point. It may very well be that the local rule could be improved, and undoubtedly the suggestions impliedly contained in the socratic questions of Judge Breyer's dissent might be of value in this respect. If improvements are to be made, however, Rule 57 indicates that they should originate with the district court itself or with the Judicial Council, not with a reviewing appellate court. *See* Fed.R.Crim.P. 57 ("A local rule so adopted ... shall remain in effect unless amended by the district court or abrogated by the judicial council of the circuit in which the district is located.").

The dissent overlooks the circumscribed nature of our review. Our appellate function is not to determine whether the district court passed the best possible rule but to determine whether the local rule complies with the standards recently summarized by the Supreme Court in *Frazier v. Heebe*, — U.S. ——, ——, 107 S.Ct. 2607, 2614, 96 L.Ed.2d 557 (1987) (Rehnquist, C.J., dissenting) (citing *Colgrove v. Battin*, 413 U.S. 149, 159–60, 162–64, 93 S.Ct. 2448, 2455–56, 37 L.Ed.2d 522 (1973); *Miner v. Atlass*, 363 U.S. 641, 651–52, 80 S.Ct. 1300, 1306–07, 4 L.Ed.2d 1462 (1960)). Our inquiry is limited to determining:

> [1] whether the rule conflicts with an Act of Congress; [2] whether the rule conflicts with the rules of procedure promulgated by the [Supreme Court]; [3] whether the rule is constitutionally infirm; ... [4] whether the subject matter governed by the rule is not within the power of a lower federal court to regulate.

*Id.* (Rehnquist, C.J., dissenting) (citations omitted). These standards were considered by the district court and discussed in our panel decision, although in different form. *See United States v. Klubock*, 832 F.2d 649, 652–53 (1987). Without unduly repeating what was stated in the panel decision, we ruled that there was no conflict with Fed.R.Crim.P. 17, *id.* at 655–56, that the supremacy clause was not implicated

because the Massachusetts rule had been incorporated as a federal local rule, *id.* at 651–52, and that the local rule was within the rule-making power of the district court in the exercise of both the inherent and statutory authority of the courts to control ethical and procedural matters in their forum. *Id.* at 652–53. Lastly, we considered, at appellant's urging, whether to exercise our supervisory authority to strike down the local rule and found that "[f]ar from concluding that the adoption of the local rule ... was an abuse of the district court's discretion ... we consider [it] to be a sound use of that authority." *Id.* at 658. This is another way of saying that the local rule was necessary and rational and that "the principles of right and justice" require its appellate support. *Frazer*, — U.S. at ——, 107 S.Ct. at 2611.

As previously stated, this is not to say that the rule is perfect, and we encourage the district court to monitor closely the working of PF 15, and to be receptive to experience-based proposals for improvement. The local rule does not lay out specific standards for determining the validity of attorney subpoenas or the specific procedures for obtaining judicial approval, but, contrary to the dissent of Chief Judge Campbell, this is not ground for invalidating the rule. This is no different than, for example, Rule 17, Fed.R.Crim.P. As we discuss in the panel opinion, *United States v. Klubock, supra*, at 656, although there is no provision in Rule 17 for quashing a subpoena *ad testificandum*, and the procedures established regarding quashing of a subpoena *duces tecum* are general in nature, not only has this measure been extended to include subpoena *ad testificandum* but a procedure has evolved to handle these matters as a result of judicial experience and practice. *See* 8 *Moore's Federal Practice* § 17.11 (2d ed. 1987). Such will be the case with PF 15. As PF 15 is used, and perhaps amended, a practice and procedure will also evolve in connection with it. In the meantime it will have a salutary effect in reducing the possibility of unethical conduct by prosecutors.

Other arguments raised in appellants' petition are adequately covered by the panel opinion.

The opinion of the district court is *affirmed.*

LEVIN H. CAMPBELL, Chief Judge (dissenting En Banc).

I cannot agree with those of my colleagues who believe that the Massachusetts district court had authority, under its rule-making powers, to adopt PF 15.[1] The provision is, in my view, a substantive innovation. Much of my reasoning is set out in my dissent found in the panel disposition of this case, *see* pages 658–64, *supra.* I rely on, and incorporate by reference, what I said there. But it may be useful to accent here what I see as PF 15's most serious defects: 1) the rule is bereft of standards to guide the district judge in determining whether or not to approve a subpoena, thus subjecting the grand jury's investigatory power to what, in practical effect, is an arbitrary veto; and 2) the rule is not a minor disciplinary or procedural device but, in fact, will operate to override current federal case law concerning the powers of the grand jury.

## I. THE RULE'S LACK OF STANDARDS

Judge Breyer's catalog of the unanswered questions raised by PF 15 is impressive, and I join in much of the reasoning set forth in his opinion. The standardless prophylaxis reflected in PF 15—"prior judicial approval"—does indeed pose a whole host of practical and theoretical problems. These defects, as Judge Breyer suggests, may be attributable to the inadequacy of the procedures the court employed in formulating the rule.

But it is the *consequence* of the procedurally flawed rulemaking—not the inadequacy of the rulemaking itself—that is my primary concern. Of course, a more vigorous set of procedures might have produced no rule at all, or a different and better rule, a rule within the statutory authority of the district court. The cold reality, nonetheless, is that the rule that was *in fact* promulgated exceeds the district court's powers. The rule before us could be saved by no administrative record, no matter how exhaustive. For one, the rule's lack of any intelligible standard to govern its application is sufficient in and of itself to render the rule invalid.

A commentator observed in 1965 that delegated law-making power had become "the dynamo of modern government." L. Jaffe, *Judicial Control of Administrative Action* 33 (1965). If so, the instant rule vividly illustrates the extremes of this dynamo: PF 15 was promulgated pursuant to Fed.R.Crim.P. 57, which authorizes district courts to fill in some gaps in the Federal Rules of Criminal Procedure; Fed.R. Crim.P. 57 was promulgated by the Supreme Court pursuant to its authority to promulgate rules of criminal procedure under 18 U.S.C. §§ 3771, 3772 (1982); the latter is a statute enacted by Congress. The instant rule, which thus reflects a third layer of "delegation," is a bestowal by the district judges of Massachusetts upon themselves, individually, of the unprecedented power to allow or prevent a grand jury subpoena. Even assuming the district court had this power to give away, its rule runs afoul of the most commonplace of delegation principles.

---

1. The rule provides in full:

   It is unprofessional conduct for a prosecutor to subpoena an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney/witness to provide evidence concerning a person who is represented by the attorney/witness.

   PF 15 was promulgated pursuant to Fed.R. Crim.P. 57, which empowers a district court to make rules "as to some matters of detail" in areas not covered by the Federal Rules of Criminal Procedure. *See* Fed.R.Crim.P. 57 advisory committee notes.

   The general grant of rule-making power to federal courts is found in 28 U.S.C. § 2071 (1982):

   The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.

The principles governing legislative delegations of power to administrative agencies provide a useful analogy. These delegations are tolerable only when the delegatee's decisionmaking is circumscribed by at least a modicum of legislative guidance. *See Hampton v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928) (a permissible delegation of legislative power must be accompanied by an "intelligible principle" to which the delegatee's decisions must conform). Here, in PF 15, the district court has vested completely uncanalized power to individual judges to "approv[e]" attorney subpoenas. The rule contains no principle, intelligible or otherwise, to guide these judges.[2]

A district court, to be sure, is not a legislature; and the district judges in whom PF 15 vests power over attorney subpoenas are judicial officers, not unaccountable agencies. But the district court's powers under Rule 57 are inherently legislative. *See Burlington Northern Railroad v. Woods*, —— U.S. ——, 107 S.Ct. 967, 969 & n. 3, 94 L.Ed.2d 1 (1987) (noting that the power to fashion procedural rules for the federal judiciary flows from Article III's grant to Congress of the power to establish federal courts, augmented by the Necessary and Proper Clause of Article I, § 8); *see also Sibbach v. Wilson*, 312 U.S. 1, 9–10, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941). Thus the principles of delegation, which constrain legislative activity, seem apposite. PF 15's utterly standardless conferral of power on district judges renders it invalid.

## II. THE OPERATION OF PF 15

An even more serious problem with PF 15 is that the novel substantive restraints which its operation inevitably imposes on the powers of the grand jury far exceed the "matters of detail" to which a local district court's rule-making power extends.

Three members of this court are apparently willing to accept appellees' curious contention that PF 15, as a matter of taxonomy, is a *disciplinary* rule. But I see little in it about attorney *discipline*. Both my colleagues and the appellees concede that the rule's true purpose is to redress a perceived tilt in the balance of power between prosecutors and grand jury targets, an imbalance believed to threaten the relationship of an investigation target and his attorney. Arising as it does from this concern, the rule is most akin to an expanded rule of attorney-client privilege, placing a new and significant limitation upon a grand jury's power to seek information from certain attorneys.

A look at PF 15 in its original context buttresses the idea that it is something other than a disciplinary rule. True, it is located among the 15 ethical standards the Supreme Judicial Court of Massachusetts has promulgated relating to the prosecutorial function.[3] As do the 14 rules preceding it, PF 15 begins, "It shall be unprofessional conduct. . . ." But there the similarity ends. The other rules all spell out the sort of behavior that is deemed unprofessional. Only PF 15 deviates from this "thou shalt not" structure. Had PF 15 truly been intended to provide an ethical standard, it would have been easy enough to make such a rule, specifying the sort of abuse of the subpoena power that constitutes an ethical violation. PF 15's deviation from the standard structure of its neighboring disciplinary rules leads to the irresistible conclusion that the rule is not really about discipline.

If PF 15 is not about discipline, the question arises, "what is it really about?" On

---

**2.** It may be argued that these judges, after all, are not lawless people, and that they can be expected to carry out their responsibilities under PF 15 under the constraints of the law that guide them in any other judicial enterprise. As discussed below, however, existing law gives virtually no leeway to courts to impose prior restraints on the issuance of grand jury subpoenas. Not only are the federal rules entirely without hint of any authority of this nature, federal case law points the other way. Unless

the judges *never* deny a subpoena, they will almost certainly act more expansively than current legal doctrine allows. *Infra.*

**3.** All 15 of these prosecutorial function rules, which comprise SJC Rules 3:08, are incorporated as local rules of the United States District Court for the District of Massachusetts under Rule 5(d)(4)(B).

its face, it is nothing more than a grant of power to a judge to grant or deny a subpoena at will. Obviously, however, the authors of the rule anticipated that the subpoena will be approved or denied for some reason. This reason must be either 1) the threat the subpoena poses to the attorney-client relationship or 2) some other reason. For a judge to deny the subpoena for some reason other than its impact on the attorney-client relationship would almost certainly defy the Supreme Court's holding that a grand jury's inquiry can be substantively limited only by "constitutional, common-law, or statutory privileges." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). Thus, we may assume that a judge's ground for withholding approval of a subpoena under PF 15 will relate in some manner to its supposed threat to the attorney-client relationship, a relationship ultimately sheltered by the attorney-client privilege.[4]

Yet this assumption, far from resolving the problem, only leads to additional ones. If PF 15 is read to empower a judge to require the prosecutor to make some kind of a "showing" of need or relevance in order for the subpoena to issue, then the rule is at odds with *In re Grand Jury Proceedings (Hill)*, 786 F.2d 3 (1st Cir. 1986), a case in which this court refused to adopt this requirement. *See also id.* at 5 n. 2 (noting that most other circuits have rejected the need and relevance test; citing cases).

Even if "prior judicial approval" did not require any prosecutorial "showing," PF 15 would still conflict with federal case law. It is well-settled law that a witness who is subpoenaed to testify before a grand jury is not entitled to the quashing of the sub-

poena in advance on the grounds of privilege, but must appear, testify, and invoke the privilege in response to particular questions. *In re Certain Complaints Under Investigation*, 783 F.2d 1488, 1518 (11th Cir.1986) (Campbell, C.J., sitting by designation) (collecting cases). The witness, moreover, bears the burden of proving each of the four elements of an attorney-client communication that render it privileged. *United States v. Wilson*, 798 F.2d 509, 512–13 (1st Cir.1986). Thus, PF 15's apparent contemplation of an ex parte proceeding between judge and prosecutor—"it is unprofessional conduct for a prosecutor to subpoena an attorney without prior judicial approval"—would relieve the claimant of these burdens, substantially expanding the scope of the privilege. In short, it is difficult to imagine how PF 15 can operate meaningfully except as a *substantive* modification of the existing rules both of grand jury power and attorney-client privilege.[5]

In conclusion, because the inevitable tendency of PF 15 is to lead the judge into actions inconsistent with federal law, *see supra*, the rule cannot be dismissed as an innocuous "disciplinary" or procedural device. Either the judge will require the prosecutor to show the relevance of the subpoena, or will assess, in advance of the subpoena's issuance, whether the attorney-client privilege applies. Both actions are impermissible under current law. Furthermore, the new requirement that this type of grand jury subpoena routinely be justified in advance is an unprecedented burden on the grand jury's powers, putting the prosecutor on the horns of a dilemma. For the prosecutor must decide, as a matter of strategy, whether to forego an attorney

---

4. Except, perhaps, in very exceptional circumstances, the legal protection afforded the attorney-client relationship will be co-extensive with the common law attorney-client privilege. *But see In Re Grand Jury Matters*, 751 F.2d 13 (1st Cir.1984). The contours of that privilege will ordinarily determine the extent to which the attorney-client relationship is protected by law. Windows of vulnerability in the attorney-client relationship are not "gaps" in the privilege rules; they are areas where there is no privilege.

5. To the extent that PF 15 effects substantive change in the law of the attorney-client privilege, it is arguably beyond even the Supreme Court's rule-making power. *See* Fed.R.Evid. 501 (the rules of privilege, in non-diversity cases, "shall be governed by the common law"). *See also* 28 U.S.C. § 2076 (1982) (providing a "fast track" method for congressional ratification of Supreme Court amendments to the Federal Rules of Evidence, save "[a]ny such amendment creating, abolishing, or modifying a privilege," which can only be adopted by a full-blown act of Congress).

subpoena if he fears a judge may deny it (thus keeping relevant information from the grand jury), or to seek approval of a subpoena and risk the possibility of having to appeal the judge's denial (thus possibly, in some instances, antagonizing the judge and/or delaying the investigation). Whether this result is "good" or "bad" as a matter of policy is not the point. It clearly involves the creation of new substantive privilege law of very significant consequence. It is not the sort of matter of detail a single district court is empowered to legislate under its local rule-making authority.

I would, therefore, reverse the judgment below.

BREYER, Circuit Judge, with whom SELYA, Circuit Judge, joins (dissenting).

This case involves two rules. The first rule is a Massachusetts Supreme Judicial Court rule of professional conduct that says that it is "unprofessional" for a "prosecutor to subpoena an attorney to a grand jury without prior judicial approval" where the prosecutor "seeks to compel" testimony about a client. Mass.S.J.C. Rule 3:08, PF 15. The second rule is a federal district court local rule that cross-references the first rule. It says that

> [a]cts or omissions ... that violate the ethical requirements and rules concerning the practice of law of the Commonwealth of Massachusetts [including S.J.C. Rule 3:08], shall constitute misconduct and shall be grounds for discipline.

D.Mass. Local Rule 5(d)(4)(B). Three members of this Court of Appeals, sitting *en banc*, find this second rule—the federal district court rule—lawful. In my view, however, as presently written, that rule, at least insofar as it incorporates PF 15, falls outside the district court's rulemaking power. In particular, the procedure that the district court followed in adopting the rule violates Federal Rule of Criminal Procedure 57, which permits a district court to "make and amend rules governing its practice" only "after giving appropriate public notice and an opportunity to comment."

The three "majority" members of the court would avoid the procedural question because the parties did not raise it in the district court or in their briefs on appeal. The majority thus follow a well-established rule that guides appellate court practice in the ordinary case. *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir.1983); *cf. Johnston v. Holiday Inns*, 595 F.2d 890, 894 (1st Cir.1979) (court of appeals ordinarily will not consider argument not presented to trial court). The case before us, however, is not one of those ordinary cases; it is distinctive in several regards. First, the procedural issue was not raised in the district court opinion because it *could not* have been raised. It was only *after* the lower court's decision that the district courts amended the original Local Rule 5(d)(4)(B) to explicitly incorporate PF 15. The act of amending raises the new issue. It is at this point that Fed.R.Crim.P. 57 requires *notice* and *comment* in order to assure a well-reasoned and thoroughly evaluated decision.

Second, the notice and comment issue, having postdated the district court case, is critical and potentially dispositive in the appellate court proceeding. A court of appeals may, of course, decide to address a critical issue not raised below. *9 to 5 Organization for Women Office Workers v. Board of Governors of Federal Reserve System*, 721 F.2d 1, 6 n. 2 (1st Cir.1983), *quoting Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases"). That power is appropriately exercised where, as here, the case is one of "great public concern," affecting the administration of criminal justice generally. *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 361 (11th Cir.1984) (deciding generally important legal issues not raised in district court); *see Schlesinger v. Councilman*, 420 U.S. 738, 743–44, 95 S.Ct. 1300, 1305–06, 43 L.Ed.2d 591 (1975) (raising *sua sponte* issue of propriety of district court's intervention in court-martial proceeding).

Given the importance of the rule; the federal context; the state orientation of the Supreme Judicial Court's consideration; the potential interest of (and potential effect upon) third parties; adequate 'federal' notice and comment would seem essential. The matter is too controversial and (in the federal context) potentially too 'special' to resolve simply through a cross reference to state procedure without appropriate canvassing and examination of the views of all those likely affected. Thus, the "notice and comment" issue is important enough to warrant our consideration. *See United States v. Krynicki*, 689 F.2d 289, 291–92 (1st Cir.1982) (examining "purely legal" issue not raised by parties where doing so would "promote judicial economy [and] aid administration of the criminal justice system").

This court, in my view, should now order additional briefing as to whether the district court provided "appropriate public notice and an opportunity to comment." Having failed to convince a majority to ask for briefing, I shall here simply explain why, on the present state of the record, I conclude that the district court did not provide for the full, public discussion that the nature of the controversy, and the Federal Rules, require.

## I

The "notice and comment" language in Federal Rule 57 represents a serious effort to create a rulemaking procedure roughly similar to that used by administrative agencies. *Cf.* 5 U.S.C. § 553 (1982) (imposing procedural requirements on agency rulemaking). The 1985 amendment to the Federal Rules that mandated this procedure followed widespread criticism of the way in which district courts previously had promulgated local rules. *See* 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 3152, at 220 (1973); Blair, *The New Local Rules for Federal Practice in Iowa*, 23 Drake L.Rev. 517, 520–21 (1974); Caballero, *Is There an Over–Exercise of Local Rule–Making Powers by the United States District Courts?*, 24 Fed.Bar News 325 (1977); Weinstein, *Reform of Federal Court Rulemaking Procedures*, 76 Colum. L.Rev. 905, 951–56 (1976); Note, *Rule 83 and the Local Federal Rules*, 67 Colum.L. Rev. 1251 (1967); Comment, *The Local Rules of Civil Procedure in the Federal District Courts—A Survey*, 1966 Duke L.J. 1011. The drafters of the amendment stated that its purpose was "to enhance the local rulemaking process by requiring appropriate public notice of proposed rules and an opportunity to comment on them." Notes of Advisory Committee on Fed.R. Crim.P. 57, 1985 Amendment.

The local rule before us presents an instance that clearly calls for application of the "notice and comment" procedure that Rule 57 mandates. The rule is an important one, significantly changing prior subpoena practice. Despite its characterization by both the Supreme Judicial Court and the district court, it is not simply an "ethical" standard. It does not simply restate the established principle that, except in narrowly defined circumstances, it is improper for a prosecutor to subpoena a lawyer in order to investigate the lawyer's client. *Cf.* U.S. Department of Justice, *United States Attorneys' Manual* § 9–2.-161(a) (1985) (forbidding U.S. Attorneys from subpoenaing attorneys for client information unless the Assistant Attorney General of the Criminal Division first determines that the information sought is necessary, unavailable from other sources, and not protected by privilege); American Bar Association, *Grand Jury Policy and Model Act*, Principle No. 29 (1982); *In re Grand Jury Matters*, 751 F.2d 13 (1st Cir. 1984) (affirming decision to quash attorney subpoenas that imposed great burdens on the attorneys and their clients and were not urgently needed at the time). Rather, the local rule is a prophylactic procedural measure aimed at forestalling in advance the perceived offending conduct.

The merits of, and need for, the local rule are strongly contested. *Cf. Levesque v. Block*, 723 F.2d 175, 184–85 (1st Cir. 1983) (agency need not follow notice and comment procedures where public is unlikely to be interested in rule). The government points out that the Department of Justice now prohibits prosecutors from is-

suing 'attorney subpoenas' without prior approval by the head of the Criminal Division, which approval will be granted only upon a showing of relevance, strong need, unavailability from other sources, and lack of privilege. *United States Attorneys' Manual* § 9–2.161(a). In addition, a lawyer receiving an 'attorney subpoena' can ask the district court to quash it. *See In re Grand Jury Matters*, 751 F.2d 13 (1st Cir. 1984). The appellees, on the other hand, believe these safeguards inadequate, and say that an additional prophylactic procedure is necessary. A "notice and comment" procedure would allow all interested parties to address these points before the district court at one time, in one place, in detail, and with knowledge of the basic arguments of others.

Moreover, the local rule has significant implications, raising a host of further questions. For example, will the 'initial approval' proceeding always take place *ex parte*? Will the same judge who grants approval automatically hear any later challenge to the subpoena? Under what standard is the judge to review the proposed subpoena? Will there be an avenue of appeal from a refusal to grant initial approval? Is a subpoena issued without initial approval invalid? If a prosecutor, while interrogating a lawyer/witness before the grand jury, discovers only then that he needs to ask about a client, must he recess the session and obtain an initial court approval? How does the district court foresee implementing sanctions for violations of the rule? The answers to some of these questions may be fairly obvious; the answers to others are not. The basic point of "notice and comment" procedure, however, is to permit, indeed to encourage, all interested parties to address issues such as these, creating a single administrative record that will help the agency (or court) to promulgate a rule that reflects careful consideration of the rule's likely ramifications and that will permit the agency (or court) to refine and to tailor the rule so as to resolve these and similar questions in the manner most likely to increase the rule's effectiveness. *See NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 777–78, 89 S.Ct. 1426, 1436, 22 L.Ed.2d 709 (1969) (Douglas, J., dissenting) ("Agencies ... are not always repositories of ultimate wisdom; they learn from the suggestions of outsiders and often benefit from that advice."); *Batterton v. Marshall*, 648 F.2d 694, 704 (D.C.Cir.1980) (noting that notice and comment procedure "enables the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those [who are] regulated") (quoting *Texaco v. FPC*, 412 F.2d 740, 744 (3d Cir.1969)); 12 C. Wright & A. Miller, *supra*, § 3152, at 220 (commenting that notice and comment procedures ensure that federal rules "reflect the best thinking of the entire profession").

Further, the answers to these questions may affect the lawfulness of the rule. At present, for example, this circuit, unlike some others, does not require a particular showing of "need" or "relevance" before a court may enforce an 'attorney subpoena.' *In re Grand Jury Proceedings (Hill)*, 786 F.2d 3, 5 n. 2 (1st Cir.1986); *see also In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238 (2d Cir.1985) (rejecting "need and relevance" standard), *cert. denied sub nom. Roe v. United States*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986); *Matter of Klein*, 776 F.2d 628, 632–34 (7th Cir.1985) (same); *cf. In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85 (3d Cir.1973) (requiring preliminary showing of propriety and relevance before enforcing subpoenas), *after remand*, 507 F.2d 963 (3d Cir.), *cert. denied sub nom. Schofield v. United States*, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). Does the district court intend a stricter standard of review? If so, the argument that the local rule falls outside the district court's rulemaking authority would become stronger. *See Miner v. Atlass*, 363 U.S. 641, 646–52, 80 S.Ct. 1300, 1303–07, 4 L.Ed.2d 1462 (1960) (restricting power of district courts to effect "basic" changes through local rules); *In re Grand Jury Proceedings*, 558 F.Supp. 532, 535–36 (W.D.Va. 1983) (urging restraint in adopting local rules touching on important policy issues). But, if not, how is the local rule supposed to prevent abuses? Are there, in fact, in the federal courts,

significant numbers of 'attorney subpoenas' that attorneys might successfully quash under present standards but that they do not challenge? Is an *ex parte* proceeding likely to provide a judge with enough information to identify an abusive subpoena and thus relieve the attorney/witness of the burdens associated with a motion to quash? To what extent can the Bar Association achieve its objective (stopping certain perceived abuses) without a change in standards? And, without such a change, is the game worth the candle? Answers to these questions would seem helpful not only to the district court, but also to an appellate court reviewing the rule both for consistency with other legal provisions and for reasonableness. *Cf. Frazier v. Heebe*, —— U.S. ——, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987) (exercising the Supreme Court's supervisory authority to overturn local rule requiring that members of a district court bar reside or maintain an office in the state). The record created by "notice and comment" rulemaking helps to provide answers to questions such as these both to those promulgating rules and to those reviewing their legality. *See Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1030–31 (D.C.Cir.1978); *Rodway v. Department of Agriculture*, 514 F.2d 809, 816–17 (D.C. Cir.1975) (noting importance of administrative record to reviewing court).

## II

A review of the record (without benefit of briefing) suggests that the district court did not give "appropriate public notice and an opportunity to comment" before adopting the local rule in question. On October 1, 1985, the Massachusetts Supreme Judicial Court added PF 15 to the "Disciplinary Rules Applicable to Practice as a Prosecutor or as a Defense Lawyer" contained in its Rule 3:08. At that time, the federal district court was in the process of revising a number of its local rules, including Rule 5(d)(4)(B). On October 7, the district court circulated proposed revised rules for comment, including a revised Rule 5(d)(4)(B) that was ambiguous as to whether or not it incorporated S.J.C. Rule 3:08. (It simply prohibited "[a]cts or omissions ... that vio-

late the Code of Professional Responsibility or Rules of Professional Conduct of the Commonwealth of Massachusetts.") The only commenter to discuss Rule 5(d)(4)(B) was the United States Attorney, who asked the court to make clear that Rule 5(d)(4)(B) did *not* incorporate S.J.C. Rule 3:08. On January 3, 1986, the Massachusetts Association of Criminal Defense Lawyers wrote to the district court, stating that the "United States Attorney ... has applied ... for an exemption for federal prosecutors from S.J.C. Rule 3:08 PF 15" and asking "that the Government's request for an exemption be made public and that the Court establish a period of time to receive comments as provided by the Rule." Three days later, the chief judge of the district court said that the court would not issue any public notice because the U.S. Attorney's filing of this lawsuit (on December 31, 1985) "effectively mooted any need for consideration of Local Rule 5(d)(4)(B)" until after a ruling in the lawsuit.

On March 19, 1986, the U.S. Attorney again asked the court to clarify Rule 5(d)(4)(B) by specifically excluding PF 15. On April 7, the presidents of the Massachusetts and Boston Bar Associations sent the court a letter calling the U.S. Attorney's request "premature," but adding that, if the district court were nonetheless to act on the request, it should grant "an ample amount of time for preparation of comments on PF 15." The bar associations cited, among other matters, the importance of the issue, the need for time to compile relevant empirical data, and the need to discuss what standards, if any, the district court's rule should include. The authors concluded that they "look forward to the [future] opportunity to present to the Court the comments of our respective bar associations on this important issue." The Massachusetts Association of Criminal Defense Lawyers also sent the court a short letter briefly endorsing the position of the Massachusetts and Boston Bar Associations and stating that the Association "await[s] advice as to a schedule for the Court's receipt of comments."

Copies of these letters were forwarded to the judges of the court. Nonetheless, the Court issued no further notice and set no additional period for comment on Rule 5(d)(4)(B). Rather, the court issued its final revised rules on June 27, 1986, effective July 1. These final rules included a revision in Rule 5(d)(4)(B) from the proposed rule of a year earlier explicitly stating that "[t]he ethical requirements and rules concerning the practice of law mean those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07 and 3:08 of said court." Thus, the final rules, unlike the proposed revised rules, explicitly incorporate Rule 3:08 and hence PF 15. And, the court adopted this language without having had the benefit of widespread comment and a thorough discussion of the relevant issues, as intended by the "notice and comment" language of Rule 57.

The record before the Supreme Judicial Court cannot substitute for the record that Rule 57 requires both because the issues before the Supreme Judicial Court were somewhat different (largely involving state prosecutions and state procedure) and because the Supreme Judicial Court had no occasion to address a federal district court's legal authority to create and to control federal procedure. Nor is there any indication that the Supreme Judicial Court considered many of the questions that we have identified as likely relevant here. In any event, the federal district court did not purport to rely on the Supreme Judicial Court record as a basis for promulgating its own rule.

In sum, the procedural rule here at issue is too important, its ramifications too complex, its contours too uncertain, for the district court to adopt it simply by means of a cross-reference, without the "appropriate public notice and an opportunity to comment" upon which Rule 57 insists. That being so, in my view, Rule 5(d)(4)(B), insofar as it simply cross-references and thereby adopts Mass.S.J.C. Rule 3:08, PF 15, is invalid.

### III

The question remains whether the U.S. Attorney is nonetheless bound directly by the Massachusetts rule. That rule has two significant, but different, effects: (1) it tells prosecutors to apply to a court for prior approval of an attorney subpoena, and (2) it tells trial courts to create a "prior approval" procedure. Regardless of the state's power to impose the first requirement, I think it clear that the supremacy clause, U.S.Const. Art. VI, cl. 2, forbids a state from ordering a federal court to adopt such particular procedures. *Cf. Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 & 19 (1958) (state cannot obstruct implementation of injunction entered by federal court); *Thompkins v. Stuttgart School District No. 22*, 787 F.2d 439, 441–42 (8th Cir.1986) (state cannot restrict federal court's exercise of pendent jurisdiction over state claim). There is no indication in the Massachusetts rule or its underlying record that the Supreme Judicial Court ever considered its power to impose procedures upon a federal court. Furthermore, it seems doubtful that Massachusetts could (or would) find that a federal prosecutor has acted unethically in failing to use a procedure that does not exist. *Cf. Woods v. New York Life Insurance Co.*, 686 F.2d 578, 581 (7th Cir.1982) (state cannot punish lawyer for mailing to potential class members notice that was approved by federal court). Thus, unless and until the federal district court, or the Supreme Court, validly promulgates a rule creating a "prior approval" procedure, it seems to me that federal prosecutors cannot and need not use it.

For these reasons, I believe that a declaratory judgment similar to that prayed for by the appellants should issue.